# IN THE SUPREME COURT OF IOWA

No. 07–1602

Filed June 25, 2010

VAN SICKLE CONSTRUCTION COMPANY
and MATTHEW J. VAN SICKLE,

     Appellees,

vs.

WACHOVIA COMMERCIAL MORTGAGE, INC.,
f/k/a THE MONEY STORE COMMERCIAL
MORTGAGE, INC.,

     Appellant.

On review from the Iowa Court of Appeals.


Appeal from the Iowa District Court for Clarke County, David L. Christensen, Judge.


In an action for fraudulent and negligent misrepresentation, plaintiff argues on further review that the district court correctly denied the defendant's motion for judgment notwithstanding the verdict. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.**


John T. Clendenin and Brad C. Epperly of Nyemaster, Goode, West, Hansell & O'Brien, P.C., Des Moines, for appellant Wachovia.


Theodore F. Sporer of Sporer & Flanagan, P.C., Des Moines, for appellees.

**HECHT, Justice.**

After purchasing two vehicles from a bank at a public auction, Matthew Van Sickle did not receive title to the vehicles for several months. He sued the bank, alleging fraudulent and negligent misrepresentation and seeking compensatory and punitive damages. After a jury verdict in favor of Van Sickle on both counts, the bank appealed. The court of appeals reversed, and we granted Van Sickle's application for further review.

## I. Factual and Procedural Background.

In 2003, Wachovia Commercial Mortgage foreclosed a mortgage against commercial real estate owned by Ivan and Jeanne Van Loon. After a sheriff's sale of the property left a significant deficiency judgment, Wachovia levied on certain personal property owned by the Van Loons, including two vehicles, a 1980 Peterbilt tractor and a 1989 International semi-tractor. On April 7, 2005, just days before the scheduled sheriff's sale of the Van Loons' personal property, Wachovia and the Van Loons agreed to conduct a public auction instead of the sheriff's sale. On April 11, Kelly Daugherty, as an agent of Wachovia, conducted the auction. Daugherty announced at the sale that the auction company would "guarantee the titles," meaning the buyers' funds would not be dispersed to Wachovia until the auction company had the titles in its possession and was able to transfer them to the buyers.

Matthew Van Sickle purchased the Peterbilt tractor and the International semi-tractor at the auction. When he asked, he was told that he would receive the title to the vehicles after his check cleared, but no specific timeframe was discussed. Van Sickle assumed he would have the titles within a few weeks to a month after the auction. He took

possession of the trucks and began making repairs to them, using parts from two other trucks he owned, rendering the other trucks unusable.

In the weeks after the sale, Daugherty sought from the county treasurer's office duplicate titles to the vehicles sold at the auction but was told he lacked the authority to obtain them because the auction had not proceeded as a sheriff's sale. Daugherty informed counsel for Wachovia of the complication. On May 27, 2005, Wachovia's counsel contacted the Van Loons' attorney and requested the titles be transferred but received no response. Wachovia then provided the treasurer's office with copies of the sheriff's levy and the court order for the auction. The treasurer transferred the title to the Peterbilt, and Wachovia forwarded it to Van Sickle in July 2005. The treasurer declined to transfer the title to the International, however, as the title to it and several other vehicles had been transferred by Ivan Van Loon to another recently-formed corporation after the sheriff had levied on them but before the auction had taken place.

On July 6, counsel for Wachovia filed a motion requesting a contempt order against Van Loon. After the contempt order was issued on July 21, 2005, Wachovia received the title certificate for the International. However, Wachovia still was unable to transfer the title to Van Sickle as the certificate had not been signed by Van Loon. After another unsuccessful demand to Van Loons' counsel, Wachovia filed a motion for a court order effecting the transfer of title. The motion was granted on August 25, 2005, and almost five months after the sale, Van Sickle finally received title to the International.

Van Sickle sued Wachovia, alleging fraudulent and negligent misrepresentation and claiming damages for economic losses. He also sought punitive damages. After a jury trial, Wachovia moved for a

directed verdict, alleging Van Sickle's claim amounted to nothing more than a breach of contract claim—that he had not established the elements of fraudulent misrepresentation and that Van Sickle's claims for both fraudulent and negligent misrepresentation were barred by the economic loss doctrine. The district court overruled the motion, and the jury returned a verdict in favor of Van Sickle on both the fraudulent misrepresentation and the negligent misrepresentation theories, awarding actual damages of $27,000 and punitive damages of $250,000. Wachovia's motion for judgment notwithstanding the verdict was denied.

On appeal, Wachovia asserted the district court erred in submitting the fraudulent misrepresentation claim to the jury because Van Sickle failed to present substantial evidence of a misrepresentation and intent to deceive. Wachovia also contended the district court erred in submitting to the jury the question of punitive damages. Wachovia further argued on appeal that the district court should not have submitted the negligent misrepresentation claim to the jury because Wachovia was not in the business of supplying information to others and because the loss claimed by Van Sickle was a purely economic loss. We transferred the case to the court of appeals, which reversed the district court, concluding Van Sickle failed to produce substantial evidence of fraudulent misrepresentation and Van Sickle's negligent misrepresentation claim was barred by the economic loss doctrine. We granted Van Sickle's application for further review.

## II. Scope of Review.

A motion for judgment notwithstanding the verdict is intended to allow the district court to correct any error in denying a motion for directed verdict. *Easton v. Howard*, 751 N.W.2d 1, 4 (Iowa 2008). Accordingly, the motion for judgment notwithstanding the verdict must

rely on the matters raised in a previous motion for directed verdict. *Id.* at 4–5. We review the denial of a motion for judgment notwithstanding the verdict for correction of errors at law. *Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 859 (Iowa 2001). Our role is to decide whether there was sufficient evidence to justify submitting the case to the jury when viewing the evidence in the light most favorable to the nonmoving party. *Id.* Each element of the plaintiff's claim must be supported by substantial evidence to warrant submission to the jury. *Magnusson Agency v. Pub. Entity Nat'l Co.-Midwest*, 560 N.W.2d 20, 25 (Iowa 1997). Evidence is substantial if a reasonable mind would find it adequate to support a finding. *Id.* We must take into consideration all reasonable inferences that could fairly be made by the jury. *Id.* "Simply put, we ask, was there sufficient evidence to generate a jury question?" *Johnson v. Dodgen*, 451 N.W.2d 168, 171 (Iowa 1990).

**III. Discussion.**

**A. Fraudulent Misrepresentation.** To establish a claim for fraudulent misrepresentation, Van Sickle has the burden of proving each of the following elements: "(1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, and (7) resulting injury and damage." *Lloyd v. Drake Univ.*, 686 N.W.2d 225, 233 (Iowa 2004). These elements must be established by "a preponderance of clear, satisfactory, and convincing proof." *Id.* Wachovia contends Van Sickle has failed to prove several of these elements.

First, Wachovia argues that Van Sickle failed to prove Wachovia made the representation attributed to it in Van Sickle's petition. The petition alleged Wachovia falsely "represented to [Van Sickle] that it had title to the vehicles in issue." However, the trial transcript reveals that neither Wachovia, nor Daugherty as its agent, made such a

representation. Van Sickle himself testified that no one told him that Wachovia actually had the titles to the vehicles. Instead, he testified that "it was represented to me that once my check cleared, I would have my titles," so it was "an assumption" on his part that Wachovia had possession of the titles at the time of the auction.

Van Sickle cites Iowa Code section 321.45(3) (2007) contending that because Iowa law requires every seller of a motor vehicle to transfer title, every person offering to sell a vehicle in this state implicitly represents that he or she has title to the vehicle. While we agree that a seller must normally transfer the title of a vehicle to a buyer, we find Van Sickle's argument overstated. *See* Iowa Code § 321.45(3) ("Upon the transfer of any registered vehicle, the owner, except as otherwise provided in this chapter, shall endorse an assignment and warranty of title upon the certificate of title for such vehicle . . . ."). We think a seller's implied representation, particularly in an auction situation such as the one at issue here, is that the seller has a legal right to transfer the titles at issue and will effect the transfer in a reasonable time. *Cf. Fausel v. JRJ Enters., Inc.*, 603 N.W.2d 612, 619 (Iowa 1999) ("When a contract fails to specify time for performance, the parties must perform within a reasonable time."); U.C.C. § 1–204(3) (2004) ("An action is taken 'seasonably' when it is taken at or within the time agreed or if no time is agreed at or within a reasonable time.").

Assuming without deciding that Wachovia, explicitly or implicitly, represented it would deliver titles to the vehicles within a commercially reasonable time after Van Sickle's check cleared but failed to do so, it was Van Sickle's burden to also establish scienter and intent to deceive—specifically that Wachovia knew the representation was false when it was made and that Wachovia intended to deceive Van Sickle. *See Lloyd*, 686

N.W.2d at 233. Scienter and intent to deceive are closely related elements of the tort, and the same general analysis applies for each. *Magnusson*, 560 N.W.2d at 28. "Scienter and intent to deceive may be shown when the speaker has actual knowledge of the falsity of his representations or speaks in reckless disregard of whether those representations are true or false." *Garren v. First Realty, Ltd.*, 481 N.W.2d 335, 338 (Iowa 1992). The fact that the titles were not transferred to Van Sickle within a commercially reasonable time after the auction is not, standing alone, sufficient to support a finding that Wachovia did not intend to do so when the representation was made. *See Robinson v. Perpetual Servs. Corp.*, 412 N.W.2d 562, 565 (Iowa 1987).

Our review of the trial transcript reveals no evidence of Wachovia's actual knowledge of the falsity of any representation as to its ability to transfer the titles within a commercially reasonable time after Van Sickle's check cleared. Although Van Loon had transferred the title to the International to another entity before the auction, the record is void of evidence Wachovia knew this fact until several weeks after the sale. Rather, the April 11 auction was preceded by a court order signed on April 7 approving the sale of the vehicles—an order to which Van Loon agreed.[1] Given Van Loon's apparent approval of the auction sale in such close temporal proximity to the April 11 auction, and given the absence of evidence tending to prove Wachovia had reason to foresee Van Loon's lack of cooperation and obstructive actions, we conclude Van Sickle did

---

[1]In addition, on March 14, four days after title to the International had in fact been transferred to the newly-formed corporation, counsel for Van Loon faxed to Wachovia's counsel a document identifying the vehicles owned by the Van Loons and subject to the auction sale. This list included the International as a vehicle titled "under Ivan Van Loon's" name.

not establish Wachovia actually knew it was making any false representations at the time of the auction.

However, Van Sickle argues that Wachovia recklessly disregarded the truth by "falsely stat[ing] or impl[ying] that [its] representations were based on personal knowledge or investigation." *Magnusson*, 560 N.W.2d at 28 ("[A] false statement innocently but mistakenly made will not establish intent to defraud unless the statement was recklessly asserted.").

To establish Wachovia's recklessness, Van Sickle relies on the fact that before the auction, Wachovia did not obtain nor seek to obtain the title certificates from Van Loon. However, we conclude Wachovia's actions, both before and after the auction, provide no support for a finding that Wachovia acted in reckless disregard for the truth of the representation that Wachovia could transfer title to the vehicles within a commercially reasonable time after the auction. Prior to April 7, 2005, Wachovia expected to proceed with a sheriff's sale of the Van Loons' personal property on April 11. As we have noted, Wachovia and Van Loon agreed on April 7 to cancel the sheriff's sale and conduct a public auction. The district court entered an order consistent with the agreement. Thus, with only four days to make new arrangements for the auction, Wachovia's omission to obtain the title certificates falls short, as a matter of law, of recklessness, particularly in the face of Van Loon's consent to the sale and the district court's order authorizing the auction. Further, after the sale, when Van Loon's scheme to avoid the judgment lien became known to Wachovia, Wachovia exerted substantial efforts to secure transfer of the titles. When the treasurer's office refused to transfer the titles to the vehicles at Daugherty's request, Wachovia provided the treasurer with the sheriff's levy and the district court order

directing the sale be completed by public auction and obtained the title to the Peterbilt. At that point, however, Van Loon's scheme regarding the International was first revealed to Wachovia. Upon learning of the scheme, counsel for Wachovia promptly requested that Van Loon transfer the title to the International, but received no response. Wachovia then filed a motion seeking a contempt order against Van Loon for his failure to comply with the April 7, 2005 order. After a hearing, Van Loon was found in contempt. Van Loon continued to refuse to execute the certificate of title to effect a transfer of the International title to Van Sickle. When these measures to complete the transaction with Van Loon were unavailing, Wachovia requested and the district court issued an order directing the county treasurer to transfer the title.

We find no evidence supporting an inference that Wachovia recklessly disregarded the truth of any statement or inference that it would make timely delivery of the titles to Van Sickle. Accordingly, Wachovia's motions for directed verdict and judgment notwithstanding the verdict on the fraudulent misrepresentation claim should have been granted.

**B. Punitive Damages.** Wachovia also contends it was entitled to a directed verdict on Van Sickle's punitive damage claim. We agree, as the punitive damage claim fails with the fraudulent misrepresentation claim. Van Sickle failed to produce clear, convincing, and satisfactory evidence supporting a finding that Wachovia willfully and wantonly disregarded Van Sickle's rights. Iowa Code § 668A.1(1)(*a*) (2003). Willful and wanton conduct involves an intentional, unreasonable act " ' "in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow." ' " *Cawthorn v. Catholic Health Initiatives Corp.*, 743 N.W.2d 525, 529 (Iowa 2007) (quoting *Kiesan v.*

*Bantz*, 686 N.W.2d 164, 173 (Iowa 2004)).  Such an act is " ' "usually accompanied by a conscious indifference to the consequences." ' "  *Id.* More than negligent conduct is required to support a punitive damage award.  *Id.*  It was Van Sickle's burden to prove Wachovia acted with actual or legal malice.  *Id.*  Actual malice may be shown by personal spite, hatred, or ill will.  " ' "[L]egal malice may be shown by wrongful conduct committed with a willful or reckless disregard of the rights of another." ' "  *Id.* (quoting *Wolf v. Wolf*, 690 N.W.2d 887, 893 (Iowa 2005)).

As described above, the record does not contain substantial evidence of reckless behavior before or after the sale on the part of Wachovia.  Although Wachovia could conceivably have been more careful to obtain possession, or ensure it could obtain possession, of the title certificates before the auction sale, a reasonable fact finder could not on this record find it acted recklessly.  After the auction sale, Wachovia sought Van Loon's voluntary cooperation to effect the transfer of the titles to Van Sickle.  When the anticipated cooperation was not forthcoming, Wachovia contacted the county treasurer's office, obtained a contempt order, and ultimately secured a court order directing the county treasurer to transfer title.  Finding no factual basis in the record supporting a finding of willful and wanton conduct in reckless disregard of Van Sickle's rights, we conclude the issue of punitive damages should not have been submitted to the jury.

**C. Negligent Misrepresentation and the Economic Loss Doctrine.**  In its motion for directed verdict and judgment notwithstanding the verdict, Wachovia asserted Van Sickle's negligent

misrepresentation claim was barred by the economic loss doctrine because Van Sickle claimed only economic damages.[2]

We think it best to begin our analysis of this issue by reviewing the development of the tort of negligent misrepresentation in our case law. Generally, if a negligent misrepresentation results in personal or property damage, courts treat it the same as other negligence claims. *Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 123 (Iowa 2001). However, when the negligent misrepresentation only interferes with intangible economic interests, courts have developed more restrictive rules of recovery. *Id.* The restrictions on recovery have been deemed necessary "because of the extent to which misinformation may be, and may be expected to be, circulated, and the magnitude of losses which may follow from reliance upon it." Restatement (Second) of Torts § 552 cmt. *a*, at 127 (1977). Thus, the tort of negligent misrepresentation as described in the Restatement (Second) is narrowly circumscribed:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

---

[2]On appeal, Wachovia also contends the district court erred in submitting the negligent misrepresentation claim to the jury because Wachovia is not in the business or profession of supplying information to others. *See Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 124 (Iowa 2001) (noting that, in Iowa, the duty of care only arises in a negligent misrepresentation case when information is provided by someone in the business or profession of supplying information to others). However, because Wachovia did not present this argument to the district court, Wachovia cannot now assert it on appeal. *See Pollman v. Belle Plaine Livestock Auction, Inc.*, 567 N.W.2d 405, 410 (Iowa 1997).

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

*Id.* § 552, at 126–27.

We first recognized the tort of negligent misrepresentation in *Ryan v. Kanne*, 170 N.W.2d 395 (Iowa 1969). Relying on Restatement (Second) section 552, we concluded an accountant was liable to a third party who reasonably relied upon financial statements prepared by the accountant who knew the information would be relied upon by the third party. *Ryan*, 170 N.W.2d at 403. We determined the appropriate measure of damages in that case should be "[t]he amount necessary to place [the third party] in the position it would have been had the [financial statements] been correct." *Id.* at 407.

In *Larsen v. United Federal Savings & Loan Ass'n of Des Moines*, 300 N.W.2d 281 (Iowa 1981), we again applied section 552 and allowed a claim by a homebuyer against a bank whose employee negligently prepared an appraisal which was relied upon by the homebuyer. *Larsen*, 300 N.W.2d at 286. Damages were contested, and we determined the damages were properly calculated as the difference between the value of the house without the defects and the value of the house with the defects. *Id.* at 288.

In *Meier v. Alfa-Laval, Inc.*, 454 N.W.2d 576 (Iowa 1990), we concluded the tort of negligent misrepresentation did not lie when a manufacturer and dealer of a milking machine system was sued by dairy

farmers who purchased defective milking equipment. *Meier*, 454 N.W.2d at 581. We narrowed the scope of the tort to claims stated against those "in the business of supplying information to others." *Id.* at 582. We reasoned that contract and warranty law provides more appropriate remedies for misstatements made during the sale of merchandise. *Id.* at 581. We consistently applied this limitation in subsequent negligent misrepresentation cases. *See Sain*, 626 N.W.2d at 124; *Hendricks v. Great Plains Supply Co.*, 609 N.W.2d 486, 492 (Iowa 2000); *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 227 (Iowa 1998); *Fry v. Mount*, 554 N.W.2d 263, 265–66 (Iowa 1996); *Freeman v. Ernst & Young*, 516 N.W.2d 835, 838 (Iowa 1994); *Haupt v. Miller*, 514 N.W.2d 905, 910 (Iowa 1994). This narrowing of the universe of potential defendants liable for negligent misrepresentations promotes fairness by ensuring that those liable are only those who supply information in an advisory capacity and are "manifestly aware" of how the information will be used and "intend[] to supply it for that purpose." *Sain*, 626 N.W.2d at 124–25. The restriction also ensures that those liable are "in a position to weigh the use for the information against the magnitude and probability of the loss that might attend the use of the information if it is incorrect."[3] *Id.* at 125.

The discussion of liability and damages in our case law[4] reveals that negligent misrepresentation has always been understood as an

---

[3]The foregoing review of the authorities limiting the universe of the parties liable for negligent misrepresentation prompts the question whether Wachovia was in the business of supplying information of the type provided at the auction. As Wachovia did not contest this point in its directed verdict motion and its posttrial motion, we assume for purposes of this appeal that it was in the business of supplying such information.

[4]Although we have not previously been asked to decide whether the economic loss doctrine applies in negligent misrepresentation cases, we note our opinions have made reference to the types of damages sought in such cases. Consistent with the Restatement (Second) formulation allowing the recovery of pecuniary losses, plaintiffs in

economic tort allowing for the recovery of purely economic losses. This understanding is confirmed by the express language of Restatement (Second) section 552 addressing the types of damages that may be recovered for the tort. A person who negligently supplies false information is liable for "pecuniary loss caused to [others] by their justifiable reliance upon the information." Restatement (Second) of Torts § 552(1), at 126. Section 552B further details the damages recoverable in a negligent misrepresentation claim.

> (1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including
>
> (a) the difference in value of what he has received in the transaction and its purchase price or other value given for it; and
>
> (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.
>
> (2) the damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant.

*Id.* § 552B, at 140.

---

Iowa cases have routinely sought recovery of purely economic damages in negligent misrepresentation cases. *See Pollman*, 567 N.W.2d at 411 (noting the damages recoverable for negligent misrepresentation were the same as damages recoverable for breach of contract in a case in which no physical harm was alleged); *Larsen*, 300 N.W.2d at 283 (homebuyers sought damages for excessive price paid for a home because of defendant's negligently prepared appraisal); *Ryan*, 170 N.W.2d at 407 (noting that lumber yard relying on misrepresentations in a financial statement was entitled to damages sufficient to put it in the place it would have been had the statement been correct); *McCracken v. Edward D. Jones & Co.*, 445 N.W.2d 375, 377 (Iowa Ct. App. 1989) (plaintiff alleged negligent misrepresentation and sought damages to compensate her for money lost when she invested in various companies pursuant to advice from defendant); *Kaiser Agric. Chems. v. Ottumwa Prod. Credit Ass'n*, 428 N.W.2d 681, 682 (Iowa Ct. App. 1988) (credit seller of fertilizer and seed sought compensation from production credit association for losses caused by extending credit to farmer who was financially unstable based on negligent advice of defendant).

Although our cases reveal that economic losses have been awarded by Iowa courts for negligent misrepresentation, the question of whether the economic loss doctrine applies in such cases has never been squarely presented for our decision. A review of the purposes of the economic loss doctrine and the situations in which it has been applied convinces us that it provides no bar to the recovery of economic losses caused by a negligent misrepresentation.

The economic loss doctrine has been characterized as "a generally recognized principle of law that plaintiffs cannot recover in tort when they have suffered only economic harm."[5] *Richards v. Midland Brick Sales Co.*, 551 N.W.2d 649, 650 (Iowa Ct. App. 1996). The rationale for this limitation on recovery is that "[p]urely economic losses usually result from the breach of a contract and should ordinarily be compensable in contract actions, not tort actions." *Id.* at 651. Accordingly, "we ultimately look to the policies behind tort law and contract law to determine whether a loss is compensable in tort or in contract." *Id.*

We first applied the doctrine in Iowa to bar recovery on a negligence claim against a bridge contractor for purely economic damages suffered by business owners when a defective bridge was temporarily closed for repairs. *Neb. Innkeepers, Inc. v. Pittsburgh-Des Moines Corp.*, 345 N.W.2d 124, 128–29 (Iowa 1984). In later cases, we determined the doctrine applied to preclude a plaintiff's recovery of economic damages under strict liability theory. *See Tomka v. Hoechst*

---

[5]We acknowledge that there are exceptions to this principle. For example, purely economic losses are recoverable in actions asserting claims of professional negligence against attorneys and accountants. *See, e.g.*, *Kemin Indus., Inc. v. KPMG Peat Marwick LLP*, 578 N.W.2d 212, 219–20 (Iowa 1998) (discussing extent to which damages for the loss of an account receivable were recoverable in a tort action against an accounting firm); *Holsapple v. McGrath*, 521 N.W.2d 711, 713–14 (Iowa 1994) (recognizing negligence claim against an attorney for the loss of a testamentary benefit).

*Celanese Corp.*, 528 N.W.2d 103, 107 (Iowa 1995) (claim by an operator of a custom cattle feeding operation asserting various tort theories against manufacturer of synthetic growth hormone which did not perform as promised); *Nelson v. Todd's Ltd.*, 426 N.W.2d 120, 123 (Iowa 1988) (claim by a butcher against a manufacturer of a defective meat curing agent). Most recently, we concluded the doctrine applied to preclude recovery on several negligence theories alleged by a homebuyer against the seller for damages the buyer incurred to repair defective structural problems. *Determan v. Johnson*, 613 N.W.2d 259, 264 (Iowa 2000). We concluded the buyer's claim was "based on her unfulfilled expectations with respect to the quality of the home she purchased. Accordingly, her remedy lies in contract law, not tort law." *Id.* at 263.

The economic loss doctrine was conceived to prevent litigants with contract claims from litigating them inappropriately as tort claims. We see no reason to apply the rule to bar a recovery of economic losses for the tort of negligent misrepresentation that is, and always has been, an economic tort allowing for recovery of purely economic damages. Restatement (Second) of Torts § 552B, at 140. Application of the economic loss doctrine in negligent misrepresentation cases would essentially eliminate the tort.

Other courts addressing this issue have concluded negligent misrepresentation claims are not barred by the economic loss doctrine. The Pennsylvania Supreme Court adopted the tort of negligent misrepresentation as defined in section 552 in a case involving a claim against an architect who supplied inaccurate information. *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 287 (Pa. 2005). In concluding that the economic loss doctrine did not preclude a recovery in tort, the court reasoned:

> Indeed, to apply the economic loss doctrine in the context of a Section 552 claim would be nonsensical: it would allow a party to pursue an action only to hold that, once the elements of the cause of action are shown, the party is unable to recover for its losses. Thus, we hold that the economic loss doctrine does not apply to claims of negligent misrepresentation sounding under Section 552.

*Id.* at 288.

The Supreme Court of Hawaii also concluded the economic loss doctrine does not bar claims of negligent misrepresentation based on section 552. *State by Bronster v. U.S. Steel Corp.*, 919 P.2d 294, 307 (Haw. 1996). The court determined that while the economic loss doctrine served an important function in the products liability arena, it was inapplicable to negligent misrepresentation claims. *Id.* at 302. The court noted that section 552(1) "expressly states that liability will attach 'for *pecuniary loss* caused . . . by [plaintiff's] justifiable reliance upon the information[.]' " *Id.* at 304 (alterations in original) (quoting Restatement (Second) of Torts § 552(1), at 126); *see also Presnell Constr. Managers, Inc. v. EH Constr., L.L.C.*, 134 S.W.3d 575, 582 (Ky. 2004) (concluding that by adopting Restatement (Second) section 552, "we agree that the tort of negligent representation defines an independent duty for which recovery in tort for economic loss is available"); *Nota Constr. Corp. v. Keyes Assocs., Inc.*, 694 N.E.2d 401, 405 (Mass. App. Ct. 1998) (noting an exception to the economic loss doctrine exists for negligent misrepresentation claims based on Restatement (Second) section 552); *Terracon Consultants W., Inc. v. Mandalay Resort Group*, 206 P.3d 81, 88 (Nev. 2009) (recognizing that the economic loss doctrine does not apply to negligent misrepresentation cases because "without such liability the law would not exert significant financial pressures to avoid such negligence").

We conclude the purposes of the economic loss doctrine would not be served by applying it to negligent misrepresentation claims.

Furthermore, application of the doctrine in such cases would contravene the plain language of section 552 and virtually eliminate the tort as recognized in Iowa. This we are not inclined to do. Accordingly, we conclude the district court properly denied Wachovia's motion for judgment notwithstanding the verdict on this ground.

**IV. Conclusion.**

We conclude the district court erred in denying Wachovia's motion for judgment notwithstanding the verdict on the fraudulent misrepresentation claim and the award of punitive damages. However, the district correctly denied Wachovia's motion as to the application of the economic loss doctrine, and the jury verdict on the negligent misrepresentation claim and resulting judgment for actual damages for that tort are affirmed. Accordingly, we affirm in part and reverse in part the district court's decision. The costs of appeal shall be assessed fifty percent to appellant and fifty percent to appellees.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT DECISION AFFIRMED IN PART AND REVERSED IN PART.**