**IN THE COURT OF APPEALS OF IOWA**

No. 15-1973
Filed August 17, 2016

**JUSTIN BOLIVER AND NICOLE L. BOLIVER,**
        Plaintiffs-Appellants,

**vs.**

**LARRY KESTER,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Marshall County, John J. Haney,

Judge.

        Property owners appeal the district court's order denying their claim of

negligent misrepresentation by the property's developer.  **AFFIRMED.**

        Gail E. Boliver and Merrill C. Swartz of Boliver Law Firm, Marshalltown, for

appellants.

        William J. Lorenz of Moore, McKibben, Goodman & Lorenz, LLP,

Marshalltown, for appellee.

        Considered by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

Property owners appeal the district court's order denying their claim of negligent misrepresentation by the property's developer. On appeal, the property owners assert the trial court erred in ruling that the developer's supplying of erroneous information to their plumbing subcontractor as to the location of the sewer connection was not negligent and did not violate a duty of the developer to provide accurate information. Upon our review, we find the district court's conclusion that the property owners failed to establish a claim of negligent misrepresentation is supported by substantial evidence. Accordingly, we affirm.

### I. Background Facts and Proceedings.

The facts underlying this case are generally undisputed. In 1998, Larry Kester decided to create a residential housing development on a portion of the eighty acres of land he owned in the Marshalltown area. To that end, Kester hired an engineering firm, and its engineers designed a preliminary plat for the creation of a subdivision named Cross Country Estates. The original preliminary plat was approved by the city, and phases of development of the subdivision subsequently began.

In 2004 a "service lateral form" was submitted to the city concerning the lot in question (Lot 6).[1] The form, signed by Kester, detailed information concerning the location of Lot 6's sewer connection, such as the location of nearby manholes and distances thereto.

---

[1] The lot was originally designated Lot 57 in the preliminary plats and was later renumbered as Lot 6 of the Sixth Addition in the final plat, dated July 11, 2006.

In 2006, before the sixth phase of the development of Cross Country Estates—which included Lot 6—was scheduled to begin, the preliminary plat for that area was modified by Kester's engineers at his request. One of the modifications was the realignment of Travis Drive and its "T" intersection at Seventh Avenue. Lot 6 is located at the southern corner of the two streets. On the original plan, Travis Drive met Seventh Avenue at a slight angle, whereas Travis Drive is perpendicular to Seventh Avenue in the modified plan. In the redesign, the city requested that the nearby manhole's location on Seventh Avenue be moved south to the center of the Travis Drive and Seventh Avenue intersection. Kester's engineers did so, and the drawing designs for the modification were all submitted to and are on file with the city. The city approved the plan. Another service lateral form detailing the relocation of the manhole was not submitted to the city, though the city never requested one.

Kester sold Lot 6 to a third party in 2008, who in turn sold it to Justin Boliver and Nicole Allen, now Nicole Boliver, sometime in 2012. After their purchase, the Bolivers hired a general contractor to build a home on the lot. The general contractor had plans drawn up, and he applied to the city for a building permit. As part of that process, the general contractor received from the city a copy of the filed 2004 service lateral form.

The general contractor subcontracted with a plumbing company to connect the house to the sewer main. A licensed master plumber and a journeyman plumber, both employed by the plumbing company, worked on the job. The plumbers received from the general contractor a copy of the 2004

service lateral form, and they verified with the city that what they had been given was correct.

The plumbers dug from the house towards the location where the form stated the sewer connection would be found. They found nothing, but they continued to dig. Kester saw the trenching going on at the construction site, and he stopped and visited with "a couple of persons that were there working on the trench." After learning the plumbers were having a problem, Kester went home and brought back a copy of the 2004 service lateral form. The plumbers advised Kester they already had a copy of the form. Kester indicated the plumbers "really weren't interested in what [he] had to offer." Kester did not mention the changed location of the manhole or provide the more recent designs to the plumbers or general contractor.

Approximately sixteen days after the search began—including eleven working days—the sewer connection was found. The trench made during the plumbers' search was seventy- to eighty-feet long, ten- to twelve-feet wide, and, in some places, eighteen-feet deep. The original estimated cost of $2500 to connect the house to the water and sewer lines skyrocketed to an actual amount just under $15,000. At some point during their search, the plumbers contacted the city engineer, but the engineer told them he was uncertain where the connection was. The city engineer came to the site after the trench had already been dug, and he suggested where to look for the connection. Beyond Kester's stop at the construction site, neither he nor his engineers were contacted by the plumbers during their search.

In August 2014, the Bolivers filed suit against Kester. They asserted claims of negligence and, after amending their petition, of negligent misrepresentation. Following a trial to the district court, the court entered its order concluding the Bolivers failed to prove their claims.

The Bolivers now appeal, contending the district court erred in so finding. They assert "Kester gave erroneous information to [the contractors] that caused them to spend time and money digging for a sewer connection at the wrong place. Kester violated his duty by negligent[ly] misrepresenting the location of the sewer hookup."

### II. Standard of Review.

We review the trial court's decision for correction of errors at law. *See* Iowa R. App. P. 6.907; *see also Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 390 (Iowa 2010). "Under this scope of review, the trial court's findings of fact have the force of a special verdict and are binding on us if supported by substantial evidence," viewing the evidence "in the light most favorable to the trial court's judgment." *Brokaw*, 788 N.W.2d at 388 (citation omitted). "Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding." *Id*. at 393 (citation omitted).

### III. Negligent Misrepresentation.

"Generally, if a negligent misrepresentation results in personal or property damage, courts treat it the same as other negligence claims." *Van Sickle Constr. Co. v. Wachovia Commercial Mortg., Inc.*, 783 N.W.2d 684, 690 (Iowa 2010).

"However, when the negligent misrepresentation only interferes with intangible economic interests, courts have developed more restrictive rules of recovery." *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 111 (Iowa 2012) (citation omitted). Specifically, "Iowa has adopted the definition of the tort of negligent misrepresentation found in the Restatement (Second) of Torts," which provides, in relevant part:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Bagelmann v. First Nat'l Bank*, 823 N.W.2d 18, 30 (Iowa 2012) (quoting Restatement (Second) of Torts § 552(1) (Am. Law. Inst. 1977)). Based upon the Iowa Supreme Court's interpretation of section 552 over the years, it can be said that a plaintiff must establish each of the following elements to support a claim of negligent misrepresentation:

> (1) [T]he defendant was in the business or profession of supplying information to others; (2) the defendant intended to supply information to the plaintiff or knew that the recipient intended to supply it to the plaintiff; (3) the information was false; (4) the defendant knew or reasonably should have known that the information was false; (5) the plaintiff reasonably relied on the information in the transaction that the defendant intended the information to influence; (6) and the false information was the proximate cause of damage to the plaintiff.

*McLeodUSA Telecomm. Servs., Inc. v. Qwest Corp.*, 469 F. Supp. 2d 677, 692 (N.D. Iowa 2007) (discussing the evolution of the elements of negligent misrepresentation under Iowa law).

The Bolivers argue on appeal "Kester gave erroneous information to [the Bolivers'] workers that caused them to spend time and money digging for a sewer connection at the wrong place." However, viewing the evidence in the light most favorable to the district court's judgment, the court's ruling is clearly supported by substantial evidence.

After hearing the evidence at trial, the district court found "Kester did not supply any information" and the plumbers were "not interested in anything [Kester] might have had to offer." Both of these findings go directly to the necessary elements of the claim: if no information was provided, there could be no misrepresentation by Kester. Moreover, even if Kester did supply information to the plumbers, it was not provided to them as part of Kester's business. Finally, even if the information was so provided, the plumbers did not rely upon the information.

Kester gave a copy of the 2004 service lateral form to the plumbers working at the construction site. But, even assuming without deciding Kester did supply information to the plumbers within the meaning of section 552 of the restatement, there certainly was no testimony by the plumber that the plumbers relied upon the information Kester provided. The Bolivers' own argument demonstrates there was no reliance upon the information provided by Kester. They assert, among other things: "The fact that the [Bolivers'] workers already had similar information[] does not change the fact that Kester's information damaged [the Bolivers]." The plumbers did not have "similar" information—the plumbers had the exact same information. Notably, they had already begun digging before Kester happened by and offered to help. Furthermore, the

plumbers "really weren't interested in what [Kester] had to offer." There simply was no evidence offered to show that the Bolivers or the plumbers relied upon the information provided by Kester; the Bolivers are in the same place they would have been if Kester had opted not to stop by the construction site.

### *IV.  Conclusion.*

Upon our review, we find the district court's conclusion that the Bolivers' failed to establish a claim of negligent misrepresentation is supported by substantial evidence.  Accordingly, we affirm.  Costs on appeal are assessed to the Bolivers.

**AFFIRMED.**