# IN THE COURT OF APPEALS OF IOWA

No. 22-1207
Filed October 11, 2023

**LOUIS CASELLI,**
 Plaintiff-Appellee,

**vs.**

**DENNIS EDWARD BORCHERS,**
 Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Henry W. Latham II, Judge.

The defendant appeals from an adverse jury verdict finding him liable for intentional infliction of emotional distress and $701,000 in damages. **REVERSED AND REMANDED.**

Jack E. Dusthimer, Davenport, for appellant.

Paul L. Macek of Hopkins & Huebner, P.C., Davenport, for appellee.

Heard by Tabor, P.J., Buller, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**POTTERFIELD, Senior Judge.**

Louis Caselli brought suit against Dennis Borchers, claiming Dennis intentionally inflicted emotional distress (IIED) on him when Dennis engaged in multiple sex acts with Louis's wife[1] who is also Dennis's biological daughter. A jury found Dennis liable and awarded Louis $701,000 in damages.

On appeal, Dennis argues (1) Louis failed to state a claim that entitled him to relief; (2) as a matter of law, his alleged conduct was not "outrageous," and there was not substantial evidence he intentionally caused, or recklessly disregarded the likelihood of causing, severe or extreme emotional distress to Louis; (3) the district court should have sustained his objections regarding marital privilege and the testimony of his wife, Teresa; and (4) the court erred when overruling several hearsay objections.

**I. Background Facts and Proceedings.**

Louis brought suit alleging that in 2018, Dennis engaged in multiple sex acts with Erica—who was Louis's wife and is Dennis's biological daughter. Louis asserted that Dennis intentionally caused him emotional distress or acted with reckless disregard of the probability of causing emotion distress and asked for money damages.

Dennis moved to dismiss, arguing Louis failed to state a claim that entitled him to relief. *See* Iowa R. Civ. P. 1.421(1)(f). As Dennis characterized it, Louis's claim "ar[o]se out of [Dennis's] interference with [the] marital relationship [of Louis and Erica]," which is akin to claiming alienation of affection—a cause of action no

---

[1] After Louis brought suit but before trial, Louis and Erica Caselli dissolved their marriage.

longer recognized in Iowa. Louis resisted, and following a hearing,[2] the district court denied the motion. Relying on case law from the Iowa Supreme Court, the district court concluded that Louis's reliance on his failed marital relationship for the IIED claim did not convert it into a now-abolished alienation-of-affection claim so the claim could proceed.

Before trial, Dennis filed a motion in limine asking the court to exclude any testimony of his wife Teresa that violated his marital privilege. *See* Iowa Code § 622.9 (2020). The district court concluded there was an exception to marital privilege when one spouse testifies against the other about incest, and it ruled that Teresa would be allowed to testify about conversations between her and Dennis that were about his performing a sex act with Erica.

At trial, Dennis testified he was married to Erica's mother while he was in the service. Dennis and the mother divorced when Erica was young, and Dennis later voluntarily gave up his parental rights so Erica could be adopted by the mother's new husband. Dennis and Erica did not have contact again until 2018—when Erica was in her late forties and Dennis in his seventies. After Erica contacted him by letter, they agreed she would travel to Iowa from her home in New Jersey to get to know him. Erica stayed with him for a number of weeks and, later in 2018, they also took a trip together to Wyoming. Dennis also visited Erica's family home in New Jersey, during which Louis and their three children were present. When Dennis was asked at trial whether he had vaginal sex or oral sex

---

[2] We do not have the transcript of this hearing.

with Erica, he invoked the Fifth Amendment. He also invoked the Fifth Amendment when asked about other possible sex acts with Erica.

With Dennis on the stand, Louis introduced pictures of text messages between Dennis's and Erica's phone numbers. The messages included Dennis responding to a selfie from Erica with "Huba huba [heart emoji]" and a series of messages Dennis sent stating, "Big hugs and kisses. Kissing your lips. Kissing you. Kissing your neck. Kissing you all over. Kissing kissing with your lips."[3] There was also a series of messages from Erica stating, "Holding your face and kissing you long and tenderly. Just me and you. . . . . Holding you and caressing you, taking you all in. You smell wonderful." Dennis responded, "Yes. Just for you," to which Erica replied, "Yes love two peas, two rings, two hearts, two souls, two mind. Two bodies, no . . . one body [fox emoji, fox emoji]." (Ellipsis in original.)

A cousin of Dennis's wife testified that she remembered a conversation from October 2018 where Dennis called and told her about Louis hiring a private investigator; during that phone call, Dennis "volunteered" the comment that in some countries, fathers can marry their daughters.

Chuck Hauman, a private investigator hired by Louis, also testified. Hauman testified that he interviewed Dennis at Dennis's home on the morning of October 12, 2018. According to Hauman, Dennis responded, "Not really," when asked if he had sex with Erica but admitted to "fondl[ing] or stimulat[ing] Erica" "[a] few times." Dennis also admitted to digital sex and mutual masturbation.

---

[3] We have added the punctuation to show breaks in messages.

5

Over Dennis's objection, Teresa was allowed to testify that Dennis admitted to having sex with Erica when Teresa asked him in November 2018. Teresa also testified that Dennis was capable of performing sexual activities.

Howard Hammer has a doctorate in psychiatry and was engaged in psychotherapy sessions with Louis beginning in January 2020. Hammer testified by way of video deposition recorded in July 2021. He opined that Louis was suffering from an adjustment disorder with anxious and depressed mood and that his disorder was caused by the knowledge that his wife was sleeping with her biological father. Hammer testified that he was continuing to treat Louis—about eighteen months after his first session—and thought it was likely Louis would need treatment for at least another year. Louis was billed $6000 for the treatment he received up to the date of the deposition. According to Hammers, Louis would probably never totally resolve his condition.

Louis testified that Erica began sleeping in a guest bedroom in their home when she returned from her first trip to Iowa to meet Dennis (in March 2018). Louis was confused about the change until later, when he overheard sexual conversations Erica and Dennis were having over the phone. Over Dennis's objection, Louis was allowed to testify as to the content of two calls. Because of what he heard, Louis hired multiple private investigators to keep tabs on Erica and Dennis as they traveled to Wyoming together in September 2018. Louis testified this was a "significant expense" that he found "very stressful." After attempting to reconcile, Louis and Erica ended their marriage in 2021. Louis testified he lost his ambition for business and his ability to focus was negatively impacted as a result of Erica and Dennis's sexual relationship. When asked "what this has cost [him],"

Louis asked if the attorney meant "everything that was caused by him?" After the attorney said yes, Dennis responded, "1.5, 1.7 million."

When testifying in his own defense, Dennis testified that in 2018, he had diabetes and was having "dysfunction with his male anatomy."

With the parties' agreement and the court's approval, Dennis filed a written motion for judgment that the court treated as a motion for directed verdict made at the proper time. *See* Iowa R. Civ. P. 1.945. He argued the court should determine as a matter of law that his conduct was not outrageous and that the evidence did not establish Dennis had either intentionally caused or recklessly disregarded the likelihood of causing severe or extreme emotional distress to Louis. Relying on the biological relationship between Erica and Dennis, Louis resisted; he argued:

> As the Court knows, we need to prove outrageous conduct by [Dennis]. [Dennis] having sex with his daughter is outrageous. In fact, it's a felony.[4] That satisfies, I think, that requirement.
> We have to show that the Defendant intentionally—or acted with reckless disregard of the probability of causing emotional distress. The evidence clearly showed that he acted, that he knew exactly what he was doing, that he knew who he was doing it with, he was concerned about it being criminal, but despite all of those things, he proceeded ahead in total disregard of the effects on anyone other than himself.

The district court announced it was "a close call" before denying the motion for directed verdict. In its oral ruling, the court cautioned Louis "in any arguments before the jury, [you are] not seeking judgment against [Dennis] for alienation of affection, it's only for the personal stress and emotion that [you have] endured, nothing else."

---

[4] Incest is a class "D" felony in Iowa. *See* Iowa Code § 726.2.

The jury returned a verdict finding Dennis liable for intentional infliction of emotional distress. It awarded Louis $701,000 in damages.[5]

Dennis filed a joint motion notwithstanding verdict and for new trial. Dennis renewed his argument that Louis failed to state a claim that warranted relief because, while relying on the tort of intentional infliction of emotional distress, at its heart he brought an alienation-of-affection claim. He also urged the court to conclude his conduct was not outrageous as a matter of law and the evidence did not establish he intentionally caused Louis emotional distress or acted with reckless disregard of the probability of causing Louis emotion distress, noting he did not take any actions in front of Louis and, in fact, Louis's knowledge of any sexual actions stemmed from his eavesdropping on Erica's private phone calls and reports he obtained by hiring a number of private investigators to follow, record, and eventually confront and interrogate Dennis. Louis resisted and, after an unreported hearing, the district court denied Dennis's motions.

Dennis appeals.

## II. Discussion.

### A. Failure to State a Claim.

Dennis argues the district court should have granted his motion to dismiss the lawsuit because Louis failed to state a claim that entitled him to relief. *See* Iowa R. Civ. P. 1.421(1)(f). Our review is for correction of errors at law. *White v. Harkrider*, 990 N.W.2d 647, 650 (Iowa 2023). "In order to sustain a motion to

---

[5] Specifically, the jury awarded Louis $6000 for past medical expenses; $45,000 for future medical expenses; $200,000 for past pain and suffering, $300,000 future pain and suffering, and $150,000 for punitive damages.

dismiss for failure to state a claim for relief, . . . we must conclude that no state of facts is conceivable under which the plaintiff might prove [his or] her right of recovery." *Van Meter v. Van Meter*, 328 N.W.2d 497, 497 (Iowa 1983).

As we understand it, Dennis claims Louis's IIED claim must fail because his reliance on his failed marital relationship as the basis for the claim converts it into an alienation-of-affection claim, which has been abolished in Iowa. *See Fundermann v. Mickelson*, 304 N.W.2d 790, 791 (Iowa 1981) (recognizing the "inherent and fatal contradiction in the term 'alienation of affections'" and abolishing the legal cause of action in Iowa). But our supreme court expressly rejected this argument in *Van Meter*, when it affirmed the district court's refusal to dismiss an IIED claim that was premised on the defendant's "seduction" of the plaintiff's former spouse. 328 N.W.2d at 497. Our supreme court held:

> The elements of the tort of intentional infliction of emotional distress, and some of its policy considerations, are different from those in an alienation claim. We cannot conclude as a matter of law that no facts are conceivable under which a claim for intentional infliction of emotional distress could be maintained merely because it, like alienation claims, arises out of a failed marital relationship.

*Id.* at 498. The district court was correct to deny Dennis's motion to dismiss for failure to state a claim.

**B. Directed Verdict.**

Next, Dennis challenges the district court's denial of his motion for directed verdict and motion for judgment notwithstanding verdict (JNOV). "A motion for [JNOV] is intended to allow the district court to correct any error in denying a motion for directed verdict." *Van Sickle Constr. Co. v. Wachovia Com. Mortg., Inc.*, 783 N.W.2d 684, 687 (Iowa 2010). "Accordingly, the motion for [JNOV] must rely on

the matters raised in a previous motion." *Id.* We review the denial of a motion for JNOV and the denial of a motion for directed verdict for correction of errors at law. *Id.*; *Crow v. Simpson*, 871 N.W.2d 98, 105 (Iowa 2015). "Our review is limited to those grounds raised in the moving party's motion for a directed verdict." *Pavone v. Kirke*, 801 N.W.2d 477, 487 (Iowa 2011).

On appellate review, "[o]ur role is to decide whether there was sufficient evidence to justify submitting the case to the jury when viewing the evidence in the light most favorable to the nonmoving party." *Van Sickle Constr. Co.*, 783 N.W.2d at 687. "Each element of the plaintiff's claim must be supported by substantial evidence to warrant submission to the jury." *Id.* Evidence is substantial if a reasonable mind would find it adequate to support a finding. *Id.* "A party moving for a directed verdict is considered to have admitted the truth of all evidence offered by the other party as well as every favorable inference that may fairly and reasonably be deduced from it." *McClure v. Walgreen Co.*, 613 N.W.2d 225, 230 (Iowa 2000).

"In determining whether the district court should have granted a directed verdict, we judge the evidence against the jury instructions when the parties do not object to the instructions." *Rumsey v. Woodgrain Millwork, Inc.*, 962 N.W.2d 9, 21 (Iowa 2021); *see also Easton v. Howard*, 751 N.W.2d 1, 5 (Iowa 2008) ("If substantial evidence in the record supports each element of a claim, the motion for directed verdict must be overruled."). So here, to establish his IIED claim, Louis had to prove all of the following:

1. Outrageous conduct by [Dennis].

2. [Dennis] intentionally caused emotional distress or acted with reckless disregard of the probability of causing emotional distress.
3. [Louis] suffered severe or extreme emotional distress.
4. [Dennis's] outrageous conduct was a cause of the emotional distress.
5. The nature and extent of [Louis's] damage.

Dennis challenges both the first and second element. He argues (1) as a matter of law, his conduct was not outrageous, as the evidence at trial was that two consenting adults engaged in private sexual acts, and our case law establishes that is not "outrageous" conduct and (2) there was not substantial evidence he either intentionally caused Louis emotional distress or acted with reckless disregard of the probability of causing Louis emotional distress.

We consider Dennis's second argument first—whether there was substantial evidence he "intentionally caused, or recklessly disregarded the likelihood of causing, severe or extreme emotional distress to [Louis]." *White*, 990 N.W.2d at 652. As Dennis points out, any sexual acts between him and Erica occurred when they were in a different state than Louis. And Dennis had no reason to know Louis—or anyone else—was listening in on private phone calls between them. Dennis and Erica did not openly or flagrantly conduct their affair; in fact, Louis hired multiple private investigators who followed Dennis and Erica across the country with the goal of obtaining proof of a sexual relationship between Dennis and Erica. Moreover, Dennis's action of engaging in the affair was not directed at Louis—there was no evidence at trial that Dennis engaged in sex acts with Erica with the intent to cause Louis emotional distress or that Dennis had any expectation Louis would ever learn about the secret sexual relationship. While Louis was ultimately emotionally distressed after learning of Erica and Dennis's

actions, there is not substantial evidence, considering the evidence in the light most favorable to Louis, that Dennis intended to cause Louis, or recklessly disregarded the probability of causing him, emotional distress.  For these reasons, the district court should have granted Dennis's motion for directed verdict.

Because we conclude the district court should have granted Dennis's motion for a directed verdict, we reverse the judgment and remand for entry of judgment in Dennis's favor.  *See* Iowa R. App. P. 6.1206.  We do not reach Dennis's claims about marital privilege and hearsay testimony.

**REVERSED AND REMANDED.**