# IN THE SUPREME COURT OF IOWA

No. 11–0117

Filed July 6, 2012

**MICHELE M. PITTS,**

Appellant,

vs.

**FARM BUREAU LIFE INSURANCE COMPANY** and **DONALD SCHIFFER,**

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Dubuque County, Monica L. Ackley, Judge.

Plaintiff seeks further review of the court of appeals decision affirming a district court order granting defendants' motion for summary judgment and dismissing her negligence and negligent misrepresentation claims. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

Christopher C. Fry of O'Connor & Thomas, P.C., Dubuque, for appellant.

Terri L. Combs, Nicole Nicolino Nayima, and Ryan P. Howell of Faegre Baker Daniels, Des Moines, for appellees.

**ZAGER, Justice**.

This case requires us to determine whether a life insurance agent owes a duty of care to the intended beneficiary of a life insurance policy. Additionally, we must decide whether a life insurance agent can be liable for negligent misrepresentation when he provides information to the insured and the intended beneficiary regarding the beneficiary designation listed on the life insurance policy. If we determine that an intended beneficiary is owed a duty of care and that a life insurance agent providing information regarding the identity of a beneficiary is a proper defendant in a negligent misrepresentation action, then we must determine whether there is a genuine issue of material fact that would preclude summary judgment. For the reasons set forth below, we find that a life insurance agent owes a duty of care to an intended beneficiary of a life insurance policy and that a life insurance agent can be liable for negligent misrepresentation. Since we also determine that genuine issues of material fact exist in this case, summary judgment should not have been granted.

## I. Factual Background and Proceedings.

Pursuant to a stipulation and order entered in 1989, Thomas Pitts (Tom) became responsible for child support payments for the benefit of his daughter, Jamie Pitts, born April 28, 1987. As part of his support obligation, Tom was required to maintain $35,000 of life insurance payable to his daughter for as long as his child support obligation continued. Unless the child was still in high school, or pursuing further postsecondary education, this support obligation would end in April of 2005.

In 1993, Tom and the plaintiff, Michele Pitts (Michele), were married. That same year, they met with Donald Schiffer, an agent for

Farm Bureau Life Insurance Company (Farm Bureau), to discuss life insurance. Tom and Michele were interested in purchasing a life insurance policy that would satisfy Tom's child support obligation and provide a benefit to Michele if she were to survive Tom. Tom purchased a life insurance policy from Farm Bureau, and on August 30, 1993, Tom signed a beneficiary designation listing Tom's daughter as the primary beneficiary for the first $50,000 in proceeds and listing Michele as the beneficiary of the "balance of [the] proceeds, if any." On December 28, 1995, Tom completed and filed a new beneficiary designation form. After the change, Tom's daughter was the primary beneficiary of the first $35,000 of life insurance proceeds, and the balance was to be paid to Michele if she survived Tom.[1] A final written change of beneficiaries was made on August 13, 1996, but the terms of that change are illegible. However, Michele does not allege that the August 13 change removed Jamie as the primary beneficiary of the first $35,000 in proceeds. According to Schiffer, this was the last change in beneficiary designation that Tom made, and neither party has produced any other written documentation regarding a subsequent change in beneficiary.

According to Michele, shortly after Tom's support obligation ended in April 2005, Tom asked Schiffer to change the beneficiary designation on the life insurance policy so that his daughter would no longer be the primary beneficiary of the first $35,000 of insurance proceeds. Michele "believe[d] Tom filled out paperwork to complete this change, but [she did] not know what he did with the paperwork." Michele claims that on separate occasions Schiffer told her and Tom that Tom's daughter was no longer listed as a beneficiary under the policy and that Michele was now

---

[1]It is unclear if this beneficiary designation was effective as it does not show that it was recorded at the home office of Farm Bureau.

the sole beneficiary. These exchanges occurred in person and over the telephone.

After Tom passed away in November 2007, Michele went to Schiffer's office to fill out the paperwork needed to claim the proceeds of the life insurance policy. Schiffer allegedly told Michele, in the presence of her parents, that she would be receiving the full amount of Tom's life insurance proceeds—about $108,000. While she was in the office, Schiffer's telephone rang, and she heard him say, "Are you sure?" and "Tom and I always talked about percentages for the kids." After he hung up the telephone, Schiffer informed Michele that Tom's daughter was still the primary beneficiary for the first $35,000 in insurance proceeds and as a result, Michele would only receive about $74,000.

On November 25, 2009, Michele filed suit against Schiffer and Farm Bureau.[2] Her claim against Schiffer alleged negligence and negligent misrepresentation, and the claim against Farm Bureau alleged liability under the doctrine of respondeat superior.[3] Farm Bureau moved for summary judgment. Farm Bureau claimed it was entitled to summary judgment on the negligence claim because the policy required any change in beneficiary to be in writing and signed by the owner. Since Michele had not provided any evidence of such a writing, Farm Bureau was under no duty to change the beneficiary. Farm Bureau also argued that it did not owe a duty to Michele because she was not the policyholder, and therefore any claim of negligence or negligent

---

[2]From this point on, unless Schiffer's individual actions are being discussed, "Farm Bureau" refers collectively to Schiffer and Farm Bureau.

[3]The original complaint also alleged a breach of fiduciary duty, which was dismissed in the district court's order granting Farm Bureau's motion for summary judgment. Pitts has not appealed this ruling, and therefore we will not consider the alleged breach of fiduciary duty.

misrepresentation failed as a matter of law. Farm Bureau also argued Schiffer was not in the business or profession of supplying information for the guidance of another in an advisory capacity and therefore, as a matter of law, could not be liable for negligent misrepresentation. Finally, Farm Bureau claimed that Michele had not come forward with admissible evidence that she was the intended beneficiary of the first $35,000 in insurance proceeds.

The district court found that "[i]t [was] undisputed that Mr. Pitts did not execute a written request to make Plaintiff the primary beneficiary" and therefore Schiffer's failure to remove Tom's daughter as a beneficiary "was not a product of negligence, but rather resulted from his lack of authority to remove [her] as the primary beneficiary without Thomas Pitts' written request." The district court then granted Farm Bureau's motion for summary judgment in its entirety and dismissed the case.

Pursuant to Iowa Rule of Civil Procedure 1.904(2), Michele filed a motion to enlarge the findings of fact and conclusions of law. Michele claimed that as the intended beneficiary of the policy, Schiffer owed her a duty of care. Michele also claimed there were disputed issues of material fact that precluded entry of summary judgment. Specifically, Michele claimed that Schiffer told her, her husband, and her parents that she was the sole beneficiary on the policy. Based on these statements, Michele claimed a jury could reasonably find in her favor on the negligence and negligent misrepresentation claims. The district court denied the motion, and Michele appealed. We transferred the case to the court of appeals, which affirmed the district court. Michele sought further review, which we granted.

## II. Standard of Review.

The district court granted Farm Bureau's motion for summary judgment. "We review a district court's grant of a motion for summary judgment for errors of law." *Seneca Waste Solutions, Inc. v. Sheaffer Mfg. Co.*, 791 N.W.2d 407, 410–11 (Iowa 2010). A court should grant summary judgment

> "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

*Id.* at 411 (quoting Iowa R. Civ. P. 1.981(3)). In other words, summary judgment is appropriate "if the record reveals a conflict only concerns the legal consequences of undisputed facts." *City of Cedar Rapids v. James Props., Inc.*, 701 N.W.2d 673, 675 (Iowa 2005) (citations and internal quotation marks omitted). When reviewing a court's decision to grant summary judgment, "we examine the record in the light most favorable to the nonmoving party and we draw all legitimate inferences the evidence bears in order to establish the existence of questions of fact." *Kragnes v. City of Des Moines*, 714 N.W.2d 632, 637 (Iowa 2006). We also note that the court should only consider "such facts as would be admissible in evidence" when considering the affidavits supporting and opposing summary judgment. Iowa R. Civ. P. 1.981(5); *see also Kern v. Palmer Coll. of Chiropractic*, 757 N.W.2d 651, 656 n.3 (Iowa 2008); *McCarney v. Des Moines Register & Tribune Co.*, 239 N.W.2d 152, 157 (Iowa 1976).

### III. The District Court's Ruling.

The district court held Tom's oral statements were insufficient to impose a duty on Schiffer to change the beneficiary of the policy. Specifically, the district court stated,

> It is undisputed that Mr. Pitts did not execute a written request to make Plaintiff the primary beneficiary. Thomas Pitts knew the procedures that he must follow to make Plaintiff the sole beneficiary, as he had previously changed his beneficiary designation under those terms on two separate occasions. Thus Defendant Schiffer's failure to act was not a product of negligence, but rather resulted from his lack of authority to remove [Tom's daughter] as the primary beneficiary without Thomas Pitts' written request.

The district court then granted Farm Bureau's motion for summary judgment and dismissed the entire case.

The district court erred when it granted summary judgment on all of plaintiff's claims. Michele was not claiming that Tom followed the proper procedures and that the beneficiary had actually been changed. She was claiming that, despite the beneficiary designation, Tom *intended* her to be the sole beneficiary of his policy. According to her petition, Schiffer's negligence and negligent misrepresentations led to Tom's daughter remaining as the primary beneficiary on a portion of the proceeds of Tom's life insurance at the time of his death, which caused her to lose $35,000 in life insurance proceeds. The question presented by this case is not as simple as whether Tom's oral expression of his desire to change the beneficiary on his policy was effective or whether it gave Schiffer the authority to change the beneficiary. The questions are whether Schiffer was negligent in responding to Tom's oral request, if made, and whether Schiffer made negligent misrepresentations after allegedly receiving Tom's oral request.

We therefore reverse the district court's grant of summary judgment on the ground stated in its initial judgment. If we reverse a district court's decision to grant summary judgment on one ground, however, we may still affirm the ruling on alternative grounds raised but not ruled on below and subsequently urged on appeal. *Kern*, 757 N.W.2d at 662. The district court granted Farm Bureau's motion for summary judgment based solely on the fact that there was no evidence of a written request to change beneficiaries. Having concluded summary judgment on that ground was in error, we must now turn to the other grounds raised below to determine if they will support granting Farm Bureau's motion for summary judgment.

## IV. Michele's Negligence Claim.

Michele alleged that Schiffer owed both her and Tom a duty to use reasonable professional skill. According to Michele, Schiffer breached that duty by "failing to take action to change the beneficiary designation upon Thomas J. Pitts's request," "failing to deliver the necessary paperwork to Thomas J. Pitts to effectuate a change in the beneficiary designation after [his] request to make a change," and "failing to display a degree of skill reasonably or ordinarily necessary in performing as an agent in the insurance business." These failures resulted in Michele not being designated as the primary beneficiary for all of the proceeds of Tom's policy.

**A. Did Schiffer Owe Michele a Duty of Care?** Farm Bureau claimed that Michele was not the beneficiary, that Schiffer only owed a duty to Tom, and that he did not owe a duty to Michele since no agent–insured relationship existed between Schiffer and Michele.[4] The district

---

[4]Farm Bureau has not argued on appeal that the economic loss rule creates a bar to recovery in this case. The economic loss rule is based on "[t]he well-established general rule . . . that a plaintiff who has suffered only economic loss due to another's

court did not discuss duty but simply stated that, "Schiffer's failure to act was not a product of negligence, but rather resulted from his lack of authority to remove [Tom's daughter] as the primary beneficiary without Thomas Pitts' written request." The court of appeals affirmed the grant of summary judgment, finding there is no "duty owed by an insurance agent to an intended beneficiary of a life insurance policy."

---

negligence has not been injured in a manner which is legally cognizable or compensable." *Neb. Innkeepers, Inc. v. Pittsburgh-Des Moines Corp.*, 345 N.W.2d 124, 126 (Iowa 1984). "As a general proposition, the economic loss rule bars recovery in negligence when the plaintiff has suffered only economic loss." *Annett Holdings, Inc. v. Kum & Go, L.C.*, 801 N.W.2d 499, 503 (Iowa 2011). The rule is partly intended to prevent the "tortification of contract law." *Id.* Another "rationale for this limitation on recovery is that '[p]urely economic losses usually result from the breach of a contract and should ordinarily be compensable in contract actions, not tort actions.'" *Van Sickle Constr. Co. v. Wachovia Commercial Mortg., Inc.*, 783 N.W.2d 684, 693 (Iowa 2010) (citation omitted) (alteration in original).

We have recently decided a case involving the application of the economic loss rule. Instead of "delineat[ing] the precise contours of the economic loss rule in Iowa" we examined whether the case has "characteristics that bring it within the scope of the economic loss rule." *Annett Holdings*, 801 N.W.2d at 504. The features of this case may place it outside the scope of the economic loss rule. First, there is no chain of contracts between Michele and Schiffer. In *Annett*, the plaintiff had contracted with a third party, who had contracted with the defendant. *Id.* at 501. Here, Tom had a contract with Schiffer and Farm Bureau, but Michele did not contract with either Tom, Schiffer, or Farm Bureau. Second, Michele's claim is not as remote as the claim rejected in *Nebraska Innkeepers*. *See id.* at 504. Schiffer's alleged negligence was the direct cause of the loss suffered by Michele. These are difficult questions to answer, and they are made more difficult by the fact that neither party has briefed this issue.

There is another potential problem regarding the application of the economic loss rule in this case. We have recognized at least three qualifications to the economic loss rule: cases where the duty of care arises out of a principal–agent relationship, claims of negligent misrepresentation, and professional negligence claims against attorneys and accountants. *Id.* We have not held that these are the only qualifications to the rule, however. *See id.*; *see also Van Sickle*, 783 N.W.2d at 692 n.5. It is possible that the professional negligence qualification may extend to insurance agents, as well as attorneys or accountants.

Whatever the merits, Farm Bureau has not raised the economic loss rule on appeal or before the district court. Our rule is that issues not argued on appeal are deemed waived. *See State v. Seering*, 701 N.W.2d 655, 661 (Iowa 2005). We decline to decide this case on an issue not briefed or argued to this court. Accordingly, we offer no opinion as to whether Michele's negligence claim would be barred by the economic loss rule.

Generally, "[a]n actionable claim of negligence requires the existence of a duty to conform to a standard of conduct to protect others, a failure to conform to that standard, proximate cause, and damages." *Thompson v. Kaczinski*, 774 N.W.2d 829, 834 (Iowa 2009) (citation and internal quotation marks omitted). In *Thompson*, we adopted the Restatement (Third) of Torts: Liability for Physical and Emotional Harm and, in general, rejected the use of foreseeability when determining, as a matter of law, that one party did not owe a duty to another. *Id.* at 835. In *Langwith v. American National General Insurance Co.*, 793 N.W.2d 215 (Iowa 2010), *superseded by statute*, 2011 Iowa Acts ch. 70, § 45 (codified at Iowa Code § 522B.11(7) (Supp. 2011)), we noted that when duty "is based on agency principles and involves economic loss, the duty analysis adopted by this court in [*Thompson*], based on Restatement (Third) of Torts: Liability for Physical and Emotional Harm, is not dispositive." 793 N.W.2d at 221 n.3.

In this case, any duty that Schiffer owed to Tom or Michele would arise out of their agency relationship as insurance agent, insured and intended beneficiary. *See Langwith*, 793 N.W.2d at 219 ("[T]he relationship between an insured and an insurance agent is one of principal/agent."); *see also Collegiate Mfg. Co. v. McDowell's Agency, Inc.*, 200 N.W.2d 854, 857–58 (Iowa 1972). Thus, this is a case that "is based on agency principles." *Langwith*, 793 N.W.2d at 222 n.3. Michele claims she has suffered the loss of $35,000 in life insurance proceeds, which is a purely economic harm. Since this is a case based on agency principles and involving economic harm, we will not rely on the concept of duty embodied in *Thompson* to determine if Schiffer owed Michele a duty of care.

The scope of the duties an insurance agent owes his client has recently been the subject of both litigation and legislation. In *Sandbulte v. Farm Bureau Mutual Insurance Co.*, 343 N.W.2d 457 (Iowa 1984), *overruled by Langwith*, 793 N.W.2d at 223, we held that an insurance agent's "general duty is the duty to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured." *Sandbulte*, 343 N.W.2d at 464. This duty could only be expanded "when the agent holds himself out as an insurance specialist, consultant or counselor and is receiving compensation for consultation and advice apart from premiums paid by the insured." *Id.* In *Langwith*, we reexamined this restrictive approach to the duty an insurance agent owes an insured and stated that "the general principles governing agency relationships convinces us that a more flexible method of determining the undertaking of an insurance agent is appropriate." 793 N.W.2d at 221. We held

> that it is for the fact finder to determine, based on a consideration of all the circumstances, the agreement of the parties with respect to the service to be rendered by the insurance agent and whether that service was performed with the skill and knowledge normally possessed by insurance agents under like circumstances. Some of the circumstances that may be considered by the fact finder in determining the undertaking of the insurance agent include the nature and content of the discussions between the agent and the client; the prior dealings of the parties, if any; the knowledge and sophistication of the client; whether the agent holds himself out as an insurance specialist, consultant, or counselor; and whether the agent receives compensation for additional or specialized services.

*Id.* at 222 (citation omitted).

The legislature responded by amending Iowa Code section 522B.11. 2011 Iowa Acts ch. 70, § 45. The new act "declares that the holding of *Langwith* is abrogated to the extent that it overrules *Sandbulte*

and imposes higher or greater duties and responsibilities on insurance producers than those set forth in *Sandbulte*." *Id.* (emphasis added). The new subsection also states that "[u]nless an insurance producer holds oneself out as an insurance specialist, consultant, or counselor and receives compensation for consultation and advice apart from commissions paid by an insurer, the duties and responsibilities of an insurance producer are limited to those duties and responsibilities set forth in *Sandbulte*." *Id.* (emphasis added).

These cases and the statute address *what* duties an insurance agent owes the insured, not *who* the agent can be liable to when those duties are breached. In this case, the scope of Schiffer's duty to Tom is clear. There is no indication in the record that Tom and Schiffer had modified the scope of their principal–agent relationship in any way. Since the agency agreement had not been modified, Schiffer, as Tom's agent, owed him

> the use of such skill as is required to accomplish the object of his employment. If he fail[ed] to exercise reasonable care, diligence, and judgment in this task, he is liable to his principal for any loss or damage occasioned thereby.

*Collegiate Mfg.*, 200 N.W.2d at 857; *see also Langwith*, 793 N.W.2d at 223 n.6; *Sandbulte*, 343 N.W.2d at 464.

Michele claims that as the intended beneficiary of Tom's life insurance policy, Schiffer owed her a duty as well. We acknowledge and dismiss Farm Bureau's claim that because Michele was not designated as the primary beneficiary for the first $35,000 in proceeds, she cannot show that she was the person Tom *intended* to be the beneficiary of the first $35,000 in proceeds. Michele is not listed as the primary beneficiary of the first $35,000 in proceeds. This is evidence of Tom's intent, but this fact, in and of itself, is not dispositive. The fact that

Michele is not named as the primary beneficiary only establishes that she is not the designated beneficiary and that the necessary steps were not taken to change the beneficiary from Tom's daughter to Michele. The fact that Michele is not actually designated as the beneficiary does not establish *why* Michele is not the beneficiary, nor does it establish that Tom did not *intend* Michele to be the beneficiary. Michele claims this was precisely what Tom intended, but his intent was frustrated by Schiffer's negligence. Thus, cases such as *Kubin v. Kubin,* 232 Iowa 1034, 6 N.W.2d 860 (1942), where the plaintiff sought to show she "took action sufficient to change the name of the beneficiary" on the policy, are not controlling. 232 Iowa at 1038, 6 N.W.2d at 862.

We also note that despite Farm Bureau's contention, Michele is not claiming that Schiffer owed her a duty based solely on her status as a *family member* of the deceased. Michele's true claim is that when an insured intends for a particular person to be the beneficiary of a life insurance policy, and the insured expresses that desire to his or her life insurance agent, the agent procuring insurance for the insured owes the insured's intended beneficiaries a duty of care to procure the insurance requested. We now address that claim.

Michele claims by analogy that *Schreiner v. Scoville,* 410 N.W.2d 679 (Iowa 1987), supports her contention that Schiffer owed her a duty of care as the intended beneficiary of the first $35,000 in proceeds from Tom's life insurance policy. In that case, Scoville, an attorney, prepared and witnessed Mary Eickholt's will. *Schreiner*, 410 N.W.2d at 680. The will left Schreiner a one-half interest in a piece of real estate and a one-half interest in the residue of the estate. *Id.* Seven months after the will was drafted, Scoville prepared and witnessed a codicil to the will that eliminated Schreiner's share of the residue of Eickholt's estate but left

Schreiner's one-half interest in the real estate intact. *Id.* One month after the codicil was drafted, Scoville brought an action for partition for the sale of the real estate. *Id.* Eight months later, the property was sold at partition sale. *Id.* Eickholt died within a year of the sale, and her will and the codicil were admitted to probate. *Id.*

The "[d]istrict court found Eickholt's devise to Schreiner had adeemed when her interest in the property was transformed from an interest in real property into an interest in personal property." *Id.* Since there were no express bequests relating to the distribution of this personal property, the proceeds from the sale became part of the residue of the estate. *Id.* Since the real property had adeemed, and the codicil eliminated Schreiner's share of the residue, Schreiner received nothing. *Id.* at 681.

Schreiner filed suit, alleging that "Scoville was negligent in failing to properly advise Eickholt" and that "Scoville negligently failed to draft Eickholt's testamentary instruments in a way that protected and fulfilled her true testamentary intent." *Id.* Since Scoville and Schreiner did not have an attorney–client relationship, Scoville moved to dismiss for failure to state a claim, and the district court granted the motion. *See id.*

On review, we began by noting the long-standing rule that "absent special circumstances such as fraud or collusion, an attorney is liable for professional malpractice *only to a client.*" *Id.* (emphasis added). We stated,

> This privity requirement flows from the Supreme Court case of *National Savings Bank v. Ward,* 100 U.S. (10 Otto) 195, 200, 203, 25 L. Ed. 621, 623, 624 (1880), and is premised upon two basic concerns. First, absent a requirement of privity, parties to a contract for legal services could easily lose control over their agreement. Second, imposing a duty to the general public upon lawyers would expose lawyers to a virtually unlimited potential for liability.

*Id.* (citation omitted). At the time, there was a trend towards allowing an intended beneficiary of a testamentary instrument to bring a claim "when the testamentary instruments themselves are rendered invalid in whole or in part as a direct result of attorney error." *Id.* at 681–82. We noted the following justifications for altering the privity requirements in certain circumstances:

> "[O]ne of the main purposes which the transaction between defendant and the testator intended to accomplish was to provide for the transfer of property to plaintiffs; the damage to plaintiffs in the event of invalidity of the bequest was clearly foreseeable; it became certain, upon the death of the testator without change of the will, that plaintiffs would have received the intended benefits but for the asserted negligence of defendant; and if persons such as plaintiffs are not permitted to recover for the loss resulting from negligence of the draftsman, no one would be able to do so, and the policy of preventing future harm would be impaired."

*Id.* at 682 (quoting *Lucas v. Hamm*, 364 P.2d 685, 688 (Cal. 1961)) (alteration in original).

In light of these considerations, we concluded that "a lawyer owes a duty of care to the direct, intended, and specifically identifiable beneficiaries of the testator as expressed in the testator's testamentary instruments." *Id.* That limited group of plaintiffs would be permitted to bring a claim "only when as a direct result of the lawyer's professional negligence the testator's intent as expressed in the testamentary instruments is frustrated in whole or in part and the beneficiary's interest in the estate is either lost, diminished, or unrealized." *Id.* at 683. We specifically noted that "a beneficiary who is simply disappointed with what he or she received from the estate will have no cause of action against the testator's lawyer." *Id.*

Michele argues the relationship between an insured, an insurance agent, and the intended beneficiary of a life insurance policy is analogous

to the relationship between a testator, an attorney, and the intended beneficiary of a testamentary instrument. This analogy has been accepted by other jurisdictions. *See Jones v. Hartford Life & Accident Ins. Co.*, 443 F. Supp. 2d 3, 6–7 (D.D.C. 2006) (noting that cases finding an attorney owes a duty to an intended beneficiary of a will are particularly relevant to determining whether an insurance agent owes an intended beneficiary an independent duty of care). The relationships share many similarities. Like a testamentary instrument, the main purpose of the defendant's transaction with the insured is to benefit the intended beneficiary–plaintiff. *See Schreiner*, 410 N.W.2d at 682. Likewise, damage to parties other than the policyholder, such as the intended beneficiary in the event of negligence, is foreseeable to the defendant. *See id.* In the case of both wills and life insurance policies, the decedent's estate has very little incentive to bring the action. *See id.* More significantly, because Tom's estate was not designated as the beneficiary of the life insurance policy, and no party has claimed that the estate was the intended beneficiary of the policy, the estate would not have a cause of action against these defendants.[5] Finally, if no cause of

---

[5]In *Duffie v. Bankers' Life Ass'n of Des Moines*, 160 Iowa 19, 139 N.W. 1087 (1913), a deceased's widow brought a negligence action against a life insurance company in both an individual capacity and in her capacity as the executor of his estate. *Duffie*, 160 Iowa at 21, 139 N.W. at 1087. She alleged the company's negligent processing of her husband's application led to him dying prior to a policy being issued even though the deceased "had done all that was required of him to obtain insurance" including paying all necessary fees and submitting to a physical examination. *Id.* at 22–24, 139 N.W. at 1087–88. According to the widow, the insurance company "owed the applicant the affirmative duty either of rejecting the application or of accepting it within a reasonable time, and upon breach of such duty it [was] liable for all damages suffered in consequences of such breach." *Id.* at 24, 139 N.W. at 1088–89. We held that the widow could bring a negligence action on behalf of the estate, but not in her individual capacity because any duty the company had to timely process an application would have been owed to the deceased, not the widow. *Id.* at 29, 139 N.W. at 1090.

*Duffie* is not applicable to the case at bar. First, the insurer's negligence in *Duffie* prevented the deceased from obtaining the policy he had applied for and paid for. Unlike in *Duffie*, Schiffer's alleged negligence did not prevent Tom from obtaining an

action could be maintained by the intended beneficiary, the very purpose for which the insurance agent was employed would be frustrated. *Cf. id.*

In its resistance to the application for further review, Farm Bureau argues that the court of appeals was correct when it noted that subsequent opinions limited the scope of our holding in *Schreiner.* The court of appeals cited to *Carr v. Bankers Trust Co.*, 546 N.W.2d 901 (Iowa 1996), and *Holsapple v. McGrath*, 521 N.W.2d 711 (Iowa 1994). In *Holsapple*, we reiterated the two concerns we expressed in *Schreiner*: that the parties might lose control over their agreement, and that "the imposition of a duty to the general public could expose lawyers to a virtually unlimited potential for liability." 521 N.W.2d at 713. However, we allowed the plaintiff's claim of negligence in the preparation of a quitclaim deed to proceed because the complaint alleged "(1) the plaintiff was specifically identified, by the donor, as an object of the grantor's intent; and (2) the expectancy was lost or diminished as a result of professional negligence." *Id.* at 714. Rather than limit the holding in *Schreiner*, *Holsapple* actually reaffirms the principles found in that case: namely that an intended, identifiable beneficiary of a transaction can bring an action against an attorney despite the lack of an attorney–client relationship with the defendant.

_____

insurance policy. Thus, Tom's estate has not suffered any damage as a result of Schiffer's alleged negligence. The absence of damages would preclude the estate from bringing a successful negligence action. Second, *Duffie* was decided decades before *Schreiner*, and if *Duffie* were decided today, the result might be different in light of that case. The widow in *Duffie* was named in the application. 160 Iowa at 21, 139 N.W. at 1087. She would clearly qualify as a direct, intended, specifically identifiable beneficiary as expressed in the written instrument. *See Schreiner*, 410 N.W.2d at 682.

We also note that in the North Western reporter, the plaintiff's name is spelled "Duffy." *See Duffy*, 139 N.W. at 1087. However, in the official Iowa reporter, the plaintiff's name is spelled "Duffie." *See Duffie*, 160 Iowa at 19.

The dispute in *Carr* began when an investment advisor for the Iowa Trust misappropriated over $65 million in trust assets, which led to the removal of the trustees. 546 N.W.2d at 902–03. Three of the trustees filed suit against the custodian and the attorneys for the trust claiming that the misappropriation of funds was a result of negligence on the part of the custodian and the attorneys. *Id.* The trustees alleged that the defendants' negligence caused them financial damages and damaged their reputations. *Id.* at 906. The defendants claimed they were entitled to summary judgment because they did not owe the trustees a duty of care. *Id.*

In determining whether summary judgment for the defendants was appropriate, we discussed the limitations on liability that were imposed in *Schreiner* and *Holsapple*. *Id.* at 906. We discussed the rationale of those cases, and we reaffirmed the principle that liability must be limited to those who were "specifically intended to benefit from the [transaction]." *Id.* We noted "[n]othing in the present record shows that either [the custodian or the attorneys] could have foreseen the trustees' reliance on their performance in their individual capacities." *Id.* at 907. We held that without evidence that the defendants "could reasonably know or have foreseen that the individual trustees were relying on the performance of the custodial or legal services for the protection of their own jobs, finances, and reputations," it was inappropriate to impose a duty to the plaintiffs on the defendants. *Id.* Summary judgment was therefore appropriate. *Id.* The holding in *Carr* does not address the duty a defendant owes to the intended beneficiary of a life insurance policy. Additionally, Michele is exactly the person Schiffer could reasonably know and foresee was relying on his professional performance for her

protection. Therefore, *Carr* is not at odds with imposing a duty of care on Schiffer to Michele in this case.

Farm Bureau also argues that "public policy advises against the imposition of a duty in this situation." They claim that recognizing that "a legal duty exists between an insurance agent and the *family member of a policy owner* would create the potential for sharp conflicts of interest whenever the policy owner's express instruction contradicts the family member's desire." (Emphasis added.) In *J.A.H. ex rel. R.M.H. v. Waddle & Associates*, 589 N.W.2d 256 (Iowa 1999), we were asked to determine whether a minor child could sue a mental health care provider for loss of parental consortium arising out of negligent treatment of the child's mother. 589 N.W.2d at 257. In determining whether the health care provider owed the child a duty, we analyzed the relationship between the plaintiff and the defendant, the foreseeability of harm, and public policy considerations. *Id.* at 261–62. We noted that even though the plaintiff and defendant were not in privity with each other, the lack of privity was not outcome determinative. *Id.* We declined to answer whether it was foreseeable to the defendants that a child could be harmed if his mother received improper mental health treatment and proceeded to consider public policy considerations. *Id.* at 262.

The child argued it was in the interests of public policy to allow him to pursue his claim because "[u]nless such claims are allowed . . . the negligent and harmful treatment may well continue unchecked because the patient is too emotionally altered to recognize the harm that has taken place." *Id.* In rejecting such a "paternalistic approach," we noted that allowing this type of suit could create an inherent conflict of interest for a mental health provider. *Id.* at 262–63. Specifically, concerns over how treatment might affect third parties might influence

how therapists treat patients. *Id.* We also noted that in order to defend against a suit brought by a third party, the doctor would need to violate doctor–patient privilege. *Id.* We concluded that "[e]liminating the potential for divided loyalties and maintaining confidentiality . . . far outweigh any threat of foreseeable harm to nonpatient family members." *Id.* at 264. Accordingly, we held, "as a matter of law, there is no duty running from a mental health care provider to nonpatient family members." *Id.*

We were also mindful of the potential "threat to the professional relationship between the testator and the lawyer" that might exist if "intended beneficiaries" were allowed to bring suits against attorneys. *Schreiner*, 410 N.W.2d at 682. We are mindful of the same concern here. Farm Bureau cautions against imposing a duty to all family members on insurance agents, claiming it will produce conflicts for insurance agents. Even if we accept Farm Bureau's contention, the point is not relevant to the outcome of this case. Michele is not arguing that she is owed a duty based on her status as a family member. Instead, she is claiming that Farm Bureau owed her a duty of care based on her status as the intended beneficiary of the policy, which is a much more circumscribed group. Imposing a duty on insurance agents to the intended beneficiary of a life insurance policy would not threaten the insured–insurer relationship, nor would imposing such a duty create the types of "divided loyalties" that led to our conclusion in *J.A.H.* *See J.A.H.*, 589 N.W.2d at 264.

Other jurisdictions have found "that an intended beneficiary can recover from another's insurance agent if the intended beneficiary can prove that intent to benefit him, or her, was a direct purpose of the transaction between the insured and agent *and* the other elements of

negligence." *Parlette v. Parlette,* 596 A.2d 665, 670–71 (Md. Ct. Spec. App. 1991); *see also* 12 Eric M. Holmes, *Holmes' Appleman on Insurance 2d,* § 85.1, at 333–35 (1999). As one commentator has noted,

> [t]he critical element in establishing a duty [to a third party who claims to have been damaged by an agent's failure to procure insurance] is the foreseeability of harm to a potential plaintiff. Liability will not lie against an [insurance agent] if a third-party's injury or loss was not foreseeable.

1 Jeffrey E. Thomas & Francis J. Mootz, *New Appleman on Insurance Law Library Edition* § 2.07[1], at 2-84 (2011) [hereinafter *Appleman*] (footnotes omitted).[6] Requiring a plaintiff to show that she was the intended beneficiary of the transaction between the agent and the insured, and the agent was aware of the plaintiff's status as the intended beneficiary, limits the universe of potential plaintiffs to those who would be foreseeable to the insurance agent. Any communication between the plaintiff and the insurance agent regarding the insured's coverage and the plaintiff's status as the insured's intended beneficiary makes harm to the plaintiff foreseeable to the agent procuring the insurance coverage. *See id.* ("Courts generally are reluctant to hold [agents] liable to third-parties on negligence theories absent specific communications between the third-party and the [agent] about the coverage to be procured." (footnotes omitted)). Also, if the plaintiff shows that he or she was the intended beneficiary of the policy at the time of the insured's death, then there is no conflict of interest for the agent because the agent's duty remains the same: carry out the intent of the insured by procuring the insurance requested. *See Sandbulte,* 343 N.W.2d at 464.

---

[6]We take this opportunity to reiterate that "[b]ecause the duty analysis in this case is based on agency principles and involves economic loss, the duty analysis adopted by this court in *Thompson v. Kaczinski,* 774 N.W.2d 829 (Iowa 2009), based on Restatement (Third) of Torts: Liability for Physical and Emotional Harm, is not dispositive." *Langwith,* 793 N.W.2d at 221 n.3.

One court that has faced this issue found it unnecessary to impose a duty on insurance agents to intended beneficiaries. In *Mims v. Western–Southern Agency, Inc.*, 226 S.W.3d 833 (Ky. Ct. App. 2007), the Kentucky court of appeals noted that if a plaintiff could show that he or she was the intended beneficiary of the policy as required by *Parlette*, then he or "she would in effect also be proving that [the insured] substantially complied with the [change of beneficiary] provisions of his insurance policy." 226 S.W.3d at 836. Showing "substantial compliance" with the policy's terms would make the plaintiff a third-party beneficiary, which would make it unnecessary to establish an independent duty to the "intended beneficiary" of the policy. *See id.* Due to Kentucky's "very liberal" substantial compliance doctrine,

> [t]he threshold inquiry under either a negligence or contract theory is essentially identical: "The question herein is not [a] dispute between the contracting parties . . . as to the terms of the contract, but one as to whom the insured intended to make a gift by way of insuring his life for same."

*Id.* (quoting *Bosse v. Bosse*, 57 S.W.2d 995, 996 (Ky. 1933)) (alteration in original).

Iowa's "substantial compliance" doctrine has been summarized as follows:

> It is apparently the law in Iowa that where it appears that an insured clearly intended to change the beneficiary named in a policy of insurance permitting such a change, and that prior to his death he gave written notice to the insurer of the change intended, the law will give effect to the change although the insured has not complied with all of the formalities specified in the contract for effecting a change of beneficiary, provided his failure in that regard was excusable under all the circumstances. In other words, proof of clear intent, plus written notice to the insurer prior to death, appears to be enough, under Iowa law, to effect the desired change, where the failure to meet all the requirements is excusable.

*Franck v. Equitable Life Ins. Co.*, 203 F.2d 473, 476–77 (8th Cir. 1953). As the above passage demonstrates, there are significant differences between requiring a plaintiff to show substantial compliance with the terms of the policy and merely showing plaintiff was the intended beneficiary of a life insurance policy. *Id.* In addition to "clear intent," a plaintiff must also provide written notice to the insurer, as well as an excuse for failing to meet the other requirements of the policy. Since Iowa's substantial compliance doctrine is not as liberal as Kentucky's, merely establishing that the plaintiff was the intended beneficiary of the policy would not satisfy the substantial compliance doctrine as it exists in Iowa. We therefore decline to adopt the rationale expressed in *Mims.*

"The critical element in establishing a duty is the foreseeability of harm to a potential plaintiff." *Appleman*, § 2.07[1], at 2-84. Our caselaw imposes a duty on other professionals for foreseeable harm to intended beneficiaries. *See Schreiner*, 410 N.W.2d at 682. Other jurisdictions impose similar duties on insurance agents and brokers for injuries to persons who are strangers to the professional relationship but who are foreseeably harmed by the professional's negligence. Insurance agents and brokers should be similarly held to owe a duty of care to third parties in limited circumstances. We therefore hold that an insurance agent owes a duty to the intended beneficiary of a life insurance policy in limited circumstances. *See United Olympic Life Ins. Co. v. Gunther*, No. 92-36710, 1994 WL 96328, at *2–3 (9th Cir. 1994); *Jones*, 443 F. Supp. 2d at 7; *Parlette,* 596 A.2d at 670–71.

In order to limit the potential liability of insurers, avoid conflicts of interests, and not interfere with the insured–insurer relationship, we will require a plaintiff to show that he or she was the "direct, intended, and specifically identifiable beneficiar[y]" of the policy as well as the other

elements of negligence. *Schreiner*, 410 N.W.2d at 682; *see also Parlette*, 596 A.2d at 670–71. Further, the plaintiff must produce evidence from the written instrument itself that indicates the plaintiff is the intended beneficiary of the policy. *Schreiner*, 410 N.W.2d at 682. If the plaintiff cannot show that he or she is the intended beneficiary of the policy, then the insurance agent does not owe that plaintiff a duty of care.

**B. Was Summary Judgment Appropriate?** Michele claims she was the intended beneficiary of the entire policy, including the first $35,000. Farm Bureau disputes this claim and states that Tom's daughter was the intended beneficiary of the first $35,000 of the policy and that Michele was only the intended beneficiary of the balance of the proceeds. If Michele truly is the intended beneficiary of the entire policy, as she claims, then Schiffer owed her a duty of care with respect to the $35,000. If she cannot establish that fact, then Schiffer did not owe her a duty of care. *See Jones*, 443 F. Supp. 2d at 7 n.3. Thus, Michele's status as the intended beneficiary was material to the outcome of the case.

Facts are disputed when reasonable minds could disagree on how these issues of fact should be resolved. *Seneca Waste Solutions*, 791 N.W.2d at 411. Motions for summary judgment must also be decided based on admissible evidence. Iowa R. Civ. P. 1.981(5); *see also Kern*, 757 N.W.2d at 656 n.3. We now examine the admissible evidence in this case to determine whether reasonable minds could disagree on whether Michele was the intended beneficiary of the entire policy.

In her affidavit opposing Farm Bureau's motion for summary judgment, Michele claims that in April 2005, shortly after his support obligation ended, "Tom asked Schiffer to change the beneficiary designation on his policy so that Jamie Pitts would no longer be the

primary beneficiary of the first $35,000 in proceeds." Michele believed Tom filled out the necessary paperwork to complete the change in beneficiary, but she does not know what he did with it. Michele claims that

> in 2006 Tom came home from a meeting with Schiffer and told [her] that [she] would receive all of the proceeds from [Tom's] life insurance policy when he passed away. . . . Tom told [Michele] that he was sure because Schiffer told him that [Michele] was now the sole beneficiary.

Michele also claims that two weeks after Schiffer met with Tom, Schiffer confirmed with her in a telephone conversation that Jamie was no longer a beneficiary under the policy. She further claims that Schiffer continued to tell her that she was the sole beneficiary on the policy after Tom's death. In a meeting in Schiffer's office, Schiffer explained to Michele that she would be receiving the full amount of Tom's life insurance proceeds, which was about $108,000. It was during this meeting that Schiffer learned that Tom's daughter Jamie was still listed as a beneficiary when he received a telephone call from Farm Bureau.

In an interrogatory, Michele asked Schiffer what procedure he normally follows when an insured makes an oral request to change a beneficiary. Schiffer responded,

> If an insured orally requests a change in his or her life insurance beneficiary designation, I inform the insured that such a change may only be made in writing by the owner of the policy. If the insured desires to go forward with the change, I work with the insured to complete the paperwork necessary to make the change, and submit the written request to Farm Bureau's home offices.

In its reply brief in support of its motion for summary judgment, Farm Bureau claimed that the statements Tom made to Michele regarding his beneficiary designation are inadmissible hearsay, or a violation of the parol evidence rule, and therefore the statements could not be

considered when ruling on a motion for summary judgment. One day before the district court granted summary judgment and dismissed the case, Farm Bureau filed a motion in limine to exclude any statements made by Tom on the ground that they are inadmissible hearsay.[7] The district court granted summary judgment and dismissed the case based on a lack of a duty on Farm Bureau's part to make a change in beneficiary. It therefore never decided the motion in limine and did not address the hearsay claims Farm Bureau raised. Likewise, the district court did not address whether Farm Bureau's claim that any statements Tom or Schiffer may have made regarding the beneficiary designation were inadmissible under the parol evidence rule. In order to determine the merits of the motion for summary judgment, we must review the evidence offered by Michele to determine whether it is admissible and whether the admissible evidence creates a genuine factual dispute.

We start by examining the applicability of the parol evidence rule to Michele's negligence claim. "The parol evidence rule forbids use of extrinsic evidence to vary, add to, or subtract from a written agreement." *I.G.L. Racquet Club v. Midstates Builders, Inc.*, 323 N.W.2d 214, 216 (Iowa 1982) (citation and internal quotation marks omitted). Michele does not dispute that the beneficiary designation on the policy indicates Tom's daughter is still the primary beneficiary of the first $35,000 in proceeds. She is not seeking to use extrinsic evidence to vary the terms of the policy; she is seeking to use extrinsic evidence to show that Schiffer's negligence is the reason the terms of the policy still include Tom's daughter as the primary beneficiary. Under this theory of liability, the

---

[7]Farm Bureau has not argued that Schiffer's statements to Michele would constitute inadmissible hearsay. Therefore, we will consider the statements Michele alleges Schiffer made to her when reviewing the motion for summary judgment.

parol evidence rule does not bar the admission of Schiffer's statements to Tom or Michele, or other evidence of Tom's intent to remove his daughter as the primary beneficiary.

Farm Bureau argues that several of the alleged oral representations Michele relies on to defeat summary judgment are out-of-court statements offered for their truth and therefore constitute inadmissible hearsay. *See* Iowa Rs. Evid. 5.801(*c*), 5.802. Farm Bureau also claims that "[t]o the extent Plaintiff argues these statements are offered to show Mr. Pitts' intent to name Plaintiff as the sole beneficiary or his belief that he had done so, they are irrelevant and immaterial." It notes that "the policy required Mr. Pitts to express his intent by submitting a signed written request to change his beneficiary designation, and the fact that he did not do so is dispositive in this case."

Again, Michele is not claiming that Tom successfully changed the beneficiary on his life insurance policy by complying, or substantially complying, with its terms. She is claiming that Tom intended her to be the primary beneficiary of the entire policy, and Schiffer's negligence prevented that from occurring. Tom's intent and belief about who was named as the primary beneficiary on his policy are both relevant and material considerations. With this use of the statements in mind, we now consider Farm Bureau's claim that some of the evidence contained in Michele's affidavit constitute inadmissible hearsay.

The first statements Farm Bureau claims are inadmissible hearsay are Tom's alleged statement to Schiffer at a meeting in 1993 "that the child support obligation was only to be secured by life insurance until [Tom's daughter] turned 18" and that Tom asked Schiffer to remove his daughter as the primary beneficiary of the entire policy once his support obligation terminated because he wanted Michele to be the sole

beneficiary of the proceeds. Statements of the declarant's intent are an exception to the hearsay rule. Iowa R. Evid. 5.803(3). Under rule 5.803(3), statements of a declarant's intent to act are admissible "to prove declarant engaged in the intended action." 7 Laurie Kratky Dore, *Iowa Practice Series, Evidence* § 5.803:3, at 836–37 (2011) (citing state and federal cases applying the doctrine established in *Mutual Life Ins. Co. v. Hillmon*, 145 U.S. 285, 12 S. Ct. 909, 36 L. Ed. 706 (1892)). Since Tom's statement demonstrates his own intent to remove his daughter as a primary beneficiary once his support obligation ended, it is admissible to prove he took steps to remove his daughter as the primary beneficiary of the first $35,000 of the proceeds of his life insurance policy. Michele's affidavit also states that Tom said she "would receive all of the proceeds from his life insurance policy when he passed away." This statement would also be admissible to show Tom's intent to give Michele all of the proceeds of his life insurance policy. Iowa R. Evid. 5.803(3).

Schiffer's statement to Tom would be admissions of a party opponent and would be excluded from the hearsay rule under rule 5.801(*d*)(2). However, Tom relayed those statements to Michele, interposing another layer of hearsay. In order to be admissible, the statements Tom made to Michele must fall within another exemption or exception to the hearsay rule. *Id.* r. 5.805. The only possible exception that applies is the exception found in rule 5.803(3), which makes admissible

> [a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), *but not including* a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

*Id.* r. 5.803(3) (emphasis added). Michele seeks to admit Tom's statement of his belief or memory of what Schiffer said to prove that Schiffer actually said it. This type of statement is expressly excluded from the exemption, "unless it relates to the execution, revocation, identification, or terms of declarant's will." *Id.*

Michele acknowledges that Tom's statement does not relate to the terms of a will. However, she argues that it does relate to the designation of a beneficiary of a life insurance policy and that the scope of rule 5.803(3) should be extended to include statements like Tom's. *See Primerica Life Ins. Co. v. Watson*, 207 S.W.3d 443, 447–48 (Ark. 2004) (applying the exception to statements relating to the declarant's statements regarding his beliefs about the beneficiary of a life insurance policy). In *Primerica*, the court noted that out of court statements of a declarant's belief are not admissible under the exception found in rule 803(3). *Id.* at 447–48. However, under Arkansas law, "provisions in life insurance contracts with reference to beneficiaries or changes in beneficiaries are in the nature of a last will and testament and, therefore, 'are construed in accordance with the rules applicable to the construction of wills.'" *Id.* at 448 (quoting *Am. Found. Life Ins. Co. v. Wampler*, 497 S.W.2d 656, 658 (Ark. 1973)). The court thus found the declarant's statements of belief about the terms of his life insurance policy admissible under the exception to the hearsay rule. *Id.*

This interpretation runs counter to the express language of rule 5.803(3), which, by its terms, only admits "a statement of memory or belief to prove the fact remembered or believed [if] it relates to the execution, revocation, identification or terms of declarant's will." When the language of the rule is clear, we need not search for meaning beyond the words used. We therefore decline to adopt Arkansas's expanded

interpretation of its version of rule 5.803(3). Therefore, any statements that Schiffer may have made to Tom that Tom then relayed to Michele are inadmissible hearsay.

Even without Tom's statement to Michele that, according to Schiffer, she was now the primary beneficiary of the entire policy, there is still enough evidence to create a factual dispute over who Tom's *intended* (not actual) beneficiary was and whether he expressed that intent to Schiffer. There are also statements from Schiffer to Michele herself where he stated that Michele was now the sole beneficiary. The alleged admissions by Schiffer would also be admissible.

As noted above, Michele must also point to evidence in the written instrument itself that identifies her as the intended beneficiary of the entire policy. According to the last written beneficiary designation, Michele was the primary beneficiary of all but $35,000 in proceeds, which were payable to Tom's daughter as required by a court order. In other words, Tom's intent, expressed in the policy itself, was that Michele would receive all policy proceeds except for those that were required by court order to be payable to Tom's daughter. In 2005, when Tom's child support obligation ended, Tom was no longer required to maintain any life insurance naming his daughter as the beneficiary. Thus the policy provides evidence that Tom intended for all proceeds that were not required to satisfy his child support obligation to be paid to Michele.

Having established that Michele has produced evidence from the written instrument itself that she was the intended beneficiary, we now turn to the question of whether summary judgment was appropriate.

> A party is entitled to summary judgment when the record shows no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. . . . "In deciding whether there is a genuine issue of material fact,

> the court . . . afford[s] the nonmoving party every legitimate inference the record will bear."

*Kern*, 757 N.W.2d at 657 (citations omitted) (alteration in original). In this case, Michele has produced admissible evidence that Tom intended to change his beneficiary designation. In response to an interrogatory, Schiffer stated that if an insured made an oral request to change a beneficiary designation, he would inform the insured that such a request must be made in writing and he would then "work with the insured to complete the paperwork necessary to make the change, and submit the written request to Farm Bureau's home offices." Michele claims that she believed Tom filled out the paperwork to complete the change, but she does not know what he did with it. Further, she has produced admissible evidence that after Tom met with Schiffer, Schiffer told her that she was the primary beneficiary of the entire policy.

Assuming all of Michele's factual allegations are true, it is reasonable to infer that Tom told Schiffer he wanted to change the beneficiary of his policy. It is also reasonable to infer that Schiffer responded as he indicated in his interrogatory and that he provided Tom with the paperwork necessary to change a beneficiary, the paperwork that Michele believed Tom filled out. Based on Schiffer's alleged statement to Michele, it is reasonable to infer that Schiffer believed that Tom had provided him with the paperwork necessary to make the change. If Tom provided Schiffer with the paperwork necessary to change his beneficiary designation, but the beneficiary designation was not changed, it is reasonable to infer that some negligence on Schiffer's part led to Tom's beneficiary designation remaining unchanged.

Michele and Schiffer dispute whether Tom intended to change the beneficiary of his policy and whether he requested to change the

beneficiary of his policy. They dispute what representations Schiffer made to Michele regarding the status of the beneficiary designation. Depending on how these factual disputes are resolved it might be reasonable to infer that Schiffer's negligence was the reason that Michele was not the primary beneficiary of the entire policy. Accordingly, there were disputed issues of material fact and summary judgment on this claim was inappropriate.

**V.  Michele's Negligent Misrepresentation Claim.**

Michele asserted a claim of negligent misrepresentation against Farm Bureau and Schiffer. Farm Bureau moved for summary judgment on this count, alleging "[t]he undisputed material facts establish that Plaintiff's negligent misrepresentation claim should also be dismissed because Plaintiff cannot prove, as a matter of law, that she was harmed in a transaction with a third party." In its December 9, 2010 decision, the district court did not specifically address the negligent misrepresentation issue. Instead, after determining Schiffer's failure to act was based on a lack of authority, the court stated "the matter is hereby dismissed." One week later, Michele filed a motion to enlarge, claiming there were disputed facts that precluded summary judgment on Michele's negligent misrepresentation claim. The motion was denied.

We will begin our discussion with a brief review of the tort of negligent misrepresentation. When a negligent misrepresentation results in personal injury or property damage, the claim is treated like any other negligence claim. *Van Sickle Constr. Co. v. Wachovia Commercial Mortg., Inc.*, 783 N.W.2d 684, 690 (Iowa 2010). "However, when the negligent misrepresentation only interferes with intangible economic interests, courts have developed more restrictive rules of recovery." *Id.* Iowa first recognized the tort in *Ryan v. Kanne,* 170 N.W.2d 395 (Iowa 1969), and

adopted the definition found in Restatement (Second) of Torts section 552. *Ryan*, 170 N.W.2d 403 at 403. According to the Restatement, negligent misrepresentation is defined as follows:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
> > (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>
> > (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
>
> (3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Restatement (Second) of Torts § 552, at 126–27 (1977).[8] This definition does not rely on "the traditional foreseeability limitation applicable to negligence claims" but instead limits "the group of persons to whom [a] defendant may be liable, short of the foreseeability of possible harm." *Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 123 (Iowa 2001) (citations and internal quotation marks omitted); *see also Van Sickle*, 783 N.W.2d at 690.

---

[8]While this case concerns the existence of a duty, the concepts relating to duty that are discussed in the Restatement (Third) of Torts apply to those situations where tortious conduct causes physical and emotional harm, not economic loss. We will therefore continue to use the principles we have developed based on section 552 of the Restatement (Second) of Torts.

Our past cases have held that only those who are "in the business of supplying information to others" can be liable for negligent misrepresentation. *Meier v. Alfa-Laval, Inc.*, 454 N.W.2d 576, 582 (Iowa 1990). We have explained the need for a more restricted view of liability:

> This narrowing of the universe of potential defendants liable for negligent misrepresentations promotes fairness by ensuring that those liable are only those who supply information in an advisory capacity and are "manifestly aware" of how the information will be used and "intend[] to supply it for that purpose." The restriction also ensures that those liable are "in a position to weigh the use for the information against the magnitude and probability of the loss that might attend the use of the information if it is incorrect."

*Van Sickle*, 783 N.W.2d at 691 (citations omitted) (alteration in original).

When determining whether a person is in the business of supplying information to others, we consider several factors. We distinguish between relationships that are arm's-length and adversarial and those that are advisory. *Sain*, 626 N.W.2d at 124–25. We also consider whether the person providing the information "is manifestly aware of the use that the information will be put, and intends to supply it for that purpose." *Id.* at 125. We consider whether the defendant gave the information to the plaintiff "gratuitously or incidental to a different service." *Id.* We have also found it appropriate to consider the role the defendant was playing when the alleged misrepresentation occurred. *See Meier*, 454 N.W.2d at 581 (determining whether a cause of action would lie where the defendant supplied information in his "role as a retail merchant").

We have found accountants, appraisers, school guidance counselors and investment brokers all fall within this class of potential defendants. *Sain*, 626 N.W.2d at 126; *Larsen v. United Fed. Savings & Loan Ass'n*, 300 N.W.2d 281, 287–88 (Iowa 1981); *Ryan*, 170 N.W. 2d at

403; *McCracken v. Edward D. Jones & Co.*, 445 N.W.2d 375, 376, 382 (Iowa Ct. App. 1989). However, we have refused to allow a suit for negligent misrepresentation where the defendant was a retailer in the business of selling and servicing merchandise, a seller who made misrepresentations pursuant to the sale of a business, a bank officer negotiating a loan guarantee with a bank customer, or an employer negotiating with an employee for employment. *Fry v. Mount*, 554 N.W.2d 263, 266 (Iowa 1996); *Freeman v. Ernst & Young*, 516 N.W.2d 835, 838 (Iowa 1994); *Haupt v. Miller*, 514 N.W.2d 905, 906, 910 (Iowa 1994); *Meier*, 454 N.W.2d at 581.

A life insurance agent falls somewhere between these two groups. On the one hand, an insurance agent, like a retailer, sells a product to a customer. This is clearly an arm's-length transaction—the type of relationship that cannot give rise to an action for negligent misrepresentation. Any information given to the prospective customer at this time would be incidental to the negotiations. At the time Schiffer sold the policy to Tom, their relationship was that of seller and buyer, a relationship that is clearly arm's-length and adversarial, as opposed to advisory, in nature. Farm Bureau states, "The only transaction at issue in this case is the purchase of the Policy from Schiffer." If that were the case, then Schiffer would not be a proper defendant in a negligent misrepresentation action.

However, Michele does not claim that Schiffer made negligent misrepresentations when Tom purchased the policy in 1993. She claims that at some point in 2006, Schiffer told her that Tom's daughter was no longer the primary beneficiary on the policy. At that point, Tom was already an insured. "[T]he relationship between an insured and an insurance agent is one of principal/agent." *Langwith*, 793 N.W.2d at 219

(citing *Collegiate Mfg.*, 200 N.W.2d at 858); *Wolfswinkel v. Gesink*, 180 N.W.2d 452, 456 (Iowa 1970) ("The agent or broker is liable on the theory that he is the agent of the insured in negotiating for a policy and that he owes a duty to his principal to exercise reasonable skill, care, and diligence in effecting the insurance."). We will keep Schiffer's role as Tom's agent in mind when considering whether he was " 'in the business of supplying information to others' " at the time the alleged misrepresentations were made. *Van Sickle*, 783 N.W.2d at 691 (quoting *Meier*, 454 N.W.2d at 582).

Other jurisdictions have recognized that negligent misrepresentation actions can be brought against insurance intermediaries. 1 *Appleman*, § 2.05[2][d][i], at 2-33 (listing cases permitting the cause of action). Like Iowa, these jurisdictions apply the definition of negligent misrepresentation that is found in section 552 of the Restatement (Second) of Torts. *See, e.g.*, *Merrill v. William E. Ward Ins.*, 622 N.E.2d 743, 748–49; (Ohio Ct. App. 1993); *Nast v. State Farm Fire & Cas. Co.*, 82 S.W.3d 114, 124 (Tex. App. 2002) ("We perceive no reason why section 552 should not apply to insurance agents."). Privity of contract between the insurance agent and the party to whom the misrepresentation was made is not required to maintain an action against an insurance agent. *Aesoph v. Kusser*, 498 N.W.2d 654, 656–57 (S.D. 1993). Instead, such a duty arises out of "the relationship of the parties, arising *out of contract or otherwise,* must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information to give it with care." *Id.* (citation and internal quotation marks omitted); *see also Merrill*, 622 N.E.2d at 748–49.

These holdings are consistent with our rule limiting liability to those in the business of supplying information. When Schiffer allegedly advised Tom and Michele that Tom's daughter was no longer the primary beneficiary on the policy, he was functioning as Tom's agent. The advisory nature of the principal–agent relationship supports allowing a claim of negligent misrepresentation. *See Sain*, 626 N.W.2d at 124–25. Michele claims Schiffer knew that Tom intended to remove his daughter as the primary beneficiary in favor of Michele. The logical consequence of telling Michele and Tom that Tom's daughter had been removed as the primary beneficiary would be that Tom would not make further efforts to remove his daughter as the primary beneficiary. Thus, Schiffer would have to be "aware of the use that the information will be put." *Id.* at 125. The consequence of providing incorrect information regarding the identity of the beneficiary of the policy is obvious and would clearly be foreseeable to Schiffer. *See Van Sickle*, 783 N.W.2d at 691 (restricting possible defendants to those "in a position to weigh the use for the information against the magnitude and probability of the loss that might attend the use of the information if it is incorrect" (citation and internal quotation marks omitted)).

We conclude Schiffer is among the class of defendants against whom an action for negligent misrepresentation may be brought. When Schiffer allegedly made the misrepresentations at issue in this case, he was acting as an insurance agent providing information regarding the identity of a beneficiary of a life insurance policy to both the insured and the intended beneficiary of the policy. The information was therefore provided " 'in the course of his business, profession or employment.' " *Id.* at 690 (quoting Restatement (Second) of Torts, § 552, at 126). The information Schiffer provided was not given for his own benefit but was

instead provided for the benefit of Michele and her husband. *See Sain*, 626 N.W.2d at 126 (noting that a "school counselor does not act for his or her own benefit, but provides information for the benefit of students"). Schiffer did not directly receive payment for the advice; however, the defendant's pecuniary interest in providing the information may be indirect. *Id.* How the information would be used and the possible harm that might result if the information he provided was incorrect were both foreseeable. Correctly informing the policyholder or the intended beneficiary as to the identity of the beneficiary on a life insurance policy is critical information that is essential to Schiffer's role as an insurance agent and "is not incidental to some more central function or service" he provided to Tom. *Id.*

Even though Michele was not the policyholder, she is a proper plaintiff in an action against Schiffer. Liability for negligent misrepresentation is "limited to loss suffered . . . by the person . . . for whose benefit and guidance [the defendant] intend[ed] to supply the information or knows that the recipient intends to supply it." *Van Sickle*, 783 N.W.2d at 690 (quoting Restatement (Second) of Torts § 552, at 126–27). The alleged misrepresentations that Schiffer made to Michele were also made in the course of Schiffer's business, and Michele's reliance on these statements were equally foreseeable. Once Michele was told that Tom's daughter was no longer the primary beneficiary on the policy, she had no reason to ask her husband to take further action to change the policy or to obtain additional insurance on her husband's life from another source if Tom refused to take the necessary steps to effectively change the beneficiary designation. Michele was named as the beneficiary of any amount of proceeds beyond that which was necessary to secure Tom's child support obligation. When asked for information

regarding other potential beneficiaries, Schiffer was under a duty "to exercise reasonable care to provide accurate representations about existing information which was ascertainable by him." *Merrill*, 622 N.E.2d at 749.

Schiffer and Michele dispute what representations Schiffer made to her. Michele's affidavit alleges that she asked Schiffer whether Tom's daughter was still the primary beneficiary under Tom's policy and Schiffer told her that Tom's daughter "was no longer a beneficiary under the policy." In response to an interrogatory, Schiffer stated that while Michele may have answered the telephone from time to time when he called Tom, he could not recall any specific conversations he may have had with Michele subsequent to Tom purchasing the life insurance. There is, therefore, a genuine issue of material fact as to whether Schiffer told Michele that Tom's daughter was no longer the primary beneficiary on the policy. This disputed fact is clearly material to the outcome of this case. Summary judgment is therefore inappropriate at this time. *See Seneca Waste Solutions*, 791 N.W.2d at 411. Since the district court's decision to grant summary judgment cannot be sustained on an alternate ground, the district court's decision is reversed, and the case is remanded.

### VI. Respondeat Superior.

Pitts's respondeat superior claim against Farm Bureau was dismissed along with the negligence and negligent misrepresentation claims. As long as Schiffer's liability remains unclear, it is impossible to resolve this issue on summary judgment. Accordingly, the district court's order dismissing this claim is reversed as well.

**VII. Disposition.**

The district court erred when it granted Farm Bureau's motion for summary judgment and dismissed the case. There is a genuine issue of material fact in dispute as to whether Michele was the intended beneficiary of all the proceeds of Tom's policy and whether Schiffer's negligence led to Tom's intent not being carried out. There is also a factual dispute over whether Schiffer made negligent misrepresentations to Michele. These disputes over material facts make summary judgment inappropriate at this time. Having found no alternative ground on which to affirm the district court's grant of summary judgment, we reverse the decision of the district court, vacate the decision of the court of appeals, and remand the case for further proceedings.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

All justices concur except Cady, C.J., and Mansfield and Waterman, JJ., who dissent.

**MANSFIELD, Justice (dissenting).**

I respectfully dissent. For the reasons stated herein, I would affirm the well-reasoned decision of the court of appeals.

**I. The Majority Incorrectly Eliminates the Previous Legal Requirement that the Plaintiff's Status as Intended Beneficiary of the Asset Had to Appear in the Decedent's Written Documentation.**

The majority's opinion is an unwarranted expansion, not an application, of existing Iowa law. In *Schreiner v. Scoville*, we held that an attorney who drafted a will leaving an interest in property to a beneficiary could be liable in negligence for failing to take additional steps to protect the beneficiary's interest when the property was sold before the testator died. 410 N.W.2d 679, 683 (Iowa 1987). We said that "a lawyer owes a duty of care to the direct, intended, and specifically identifiable beneficiaries of the testator *as expressed in the testator's testamentary instruments.*" *Id.* at 682 (emphasis added). We further stated, "If the testator's intent, as expressed in the testamentary instruments, is fully implemented, no further challenge will be allowed." *Id.* at 683.

We reaffirmed the same basic limitation in *Holsapple v. McGrath*, 521 N.W.2d 711, 713–14 (Iowa 1994). There we held the named grantees of a quitclaim deed could sue the attorney who prepared the deed but negligently failed to have it notarized. *Id.* While indicating that *Schreiner* could be applied to inter vivos as well as testamentary transfers, we also quoted the language from *Schreiner* that the plaintiff had to be a " 'specifically identifiable' beneficiary 'as expressed in the testator's testamentary instruments.' " *Id.* at 713 (quoting *Schreiner*, 410 N.W.2d at 682). We said that more than

> an unrealized expectation of benefits must be shown; a
> plaintiff must show that the testator (or here, the grantor)

attempted to put the donative wishes into effect and failed to do so only because of the intervening negligence of a lawyer.

*Id.*; *see also Carr v. Bankers Trust Co.*, 546 N.W.2d 901, 906 (Iowa 1996) (noting that in *Holsapple* "the claimants were specifically identified and the extent of their interest was known [and that t]he claimants were undisputably the objects of the clients' donative intent"). In short, prior Iowa law allowed negligence claims by putative beneficiaries only to the extent the plaintiff's status as intended recipient of the property was revealed in the written instrument.

The majority changes that law. It does so by removing the limitation that the intent to provide for the beneficiary must have been "expressed in" the written instrument. *See Holsapple*, 521 N.W.2d at 713. In this case, the life insurance policy concededly left the $35,000 to Tom's daughter, not Michele. The daughter, not Michele, was the "expressed" beneficiary of the $35,000. Nothing in the transaction documents indicated that Tom intended Michele to receive the $35,000. Thus, we do not have a situation as in *Schreiner* and *Holsapple* where a written plan was prepared and thwarted simply due to the negligence of a professional. *See Holsapple*, 521 N.W.2d at 713 (citing *Schreiner*, 410 N.W.2d at 682–83). Instead, we have a swearing contest over whether a change to the written plan was requested and over who is to blame for failing to carry that change into effect.

The majority points out that Michele was the designated beneficiary for all but $35,000 of the life insurance proceeds. The majority goes on to emphasize that "the plaintiff must produce evidence from the written instrument itself that indicates the plaintiff is the intended beneficiary of the policy." This is a worthwhile limitation. It means that someone who is not referred to in the written documentation

as a beneficiary will not have a cause of action. But it does not erase the fact that the majority is expanding the law. Under our prior law, the salient question was whether the written instrument expressed an intent to make her the beneficiary of *the interest at issue*, i.e., the $35,000. *See Carr*, 546 N.W.2d at 906. Thus, today's rule breaks new ground by allowing people to bring negligence claims to increase the amount of their payout over what the written documentation provided. And although the majority's partial caution is praiseworthy, it is difficult to see the rhyme or reason of a rule that requires *some* mention in the written documentation as an admission ticket but then permits the plaintiff to argue the admission ticket was a mistake.

Allowing people to file suits alleging that someone who wasn't their agent negligently failed to arrange for them to receive a benefit—without written proof they were supposed to receive that benefit—will lead to uncertainty and instability. We would be better off sticking to the *Schreiner* rule that if the intent expressed in the written instrument is fully implemented, no challenge by an alleged beneficiary will be allowed. *Schreiner*, 410 N.W.2d at 683. Notably, in past instances where persons have been able to sue for failure to be properly designated as insurance beneficiaries, there has almost always been written documentation to establish their status as intended beneficiaries of those proceeds. *See United Olympic Life Ins. Co. v. Gunther*, No. 92–36710, 1994 WL 96328, *1 (9th Cir. March, 24, 1994) (allowing claim for negligence against insurance company where written "Policy Change Request" form was signed by the insured and the insurance company accepted the form, improperly advised insured about requirements for changing the beneficiary, and improperly advised the intended beneficiaries that they were the actual beneficiaries); *Jones v. Hartford Life & Accident Ins. Co.*,

443 F. Supp. 2d 3, 7 (D.D.C. 2006) (plaintiff alleged that "she was the named beneficiary" under the policy); *Sun Life Assurance of Can. v. Barnard*, 652 So. 2d 681, 685 (La. Ct. App. 1995) (holding that an insurance agent could be liable to an intended beneficiary of a life insurance policy when the change of beneficiary form had been executed but was not valid because the agent failed to date it properly).

The only exception to that pattern cited by the majority is *Parlette v. Parlette*, a decision of Maryland's intermediate appellate court. 596 A.2d 665, 670–71 (Md. Ct. Spec. App. 1991). That case involved some unique facts. The son of divorced parents purchased a life insurance policy from the father, an insurance agent. *Id.* at 667. The son died three years later, and the mother learned at that point that the father was the designated beneficiary. *Id.* Various friends and siblings of the son informed the mother that the son had actually intended her to receive the benefits of the policy. *Id.* An eyewitness reported that he was present when the father had sold the policy to the son and that the father had said he would make the mother the beneficiary. *Id.* at 668. According to the witness, the son signed a blank application, but the father later filled in his own name as beneficiary. *Id.*

The mother sued the father (her ex-spouse) for fraud and negligence, among other claims. *Id.* at 667–68. The court held that the negligence action could proceed to the jury. *Id.* at 670. Although *Parlette* did not involve written documentation showing that the mother was supposed to be the beneficiary, it has several distinctive facts. The agent was not disinterested but was in a position to receive the proceeds if the mother did not. *Id.* at 667. Also, there was eyewitness testimony, not from the mother herself, to the effect that that the father-agent had

essentially tricked the son and the mother. *Id.* at 668. Nothing like those facts is present here.

Meanwhile, there is a substantial body of law declining to allow "intended beneficiaries" to maintain negligence actions against life insurance agents. *See, e.g., Jackson Nat'l Life Ins. Co. v. Cabrera*, 48 F. App'x 618, 619–20 (9th Cir. 2002) (holding any duty that arose out of conduct by the life insurer's agent was a duty to the insured as the owner of the policy, not to the purported beneficiaries of the policy); *Smith v. Equifax Servs., Inc.*, 537 So.2d 463, 464 (Ala. 1988) ("[A] beneficiary named in a pending insurance application does not have a right to maintain an action against an insurance company for negligently processing an insurance application." (citation and internal quotation marks omitted)); *State ex rel. William Ranni Assocs., Inc. v. Hartenbach*, 742 S.W.2d 134, 140–41 (Mo. 1987) (holding that beneficiaries of a life insurance policy were merely incidental beneficiaries who were not owed any duties by the agent); *cf. Rihon v. Wilson*, 415 So. 2d 94, 95–96 (Fla. Dist. Ct. App. 1982) (dismissing negligence action brought by additional insured under automobile liability insurance policy against insured's agent); *Workman v. McNeal Agency, Inc.*, 458 S.E.2d 707, 709 (Ga. Ct. App. 1995) (finding that a plaintiff who alleged that she should have been named on a liability policy as an additional insured could not maintain a negligence action against the agent). None of those cases are discussed by my colleagues.

If suits by "intended beneficiaries" are going to be allowed, there are good reasons to limit them to situations where documentary proof exists that the plaintiff was the intended beneficiary of the proceeds at issue. The insured is no longer around to speak to his or her own intent. All we know for certain is that the insured did *not* make a legally valid

designation of the plaintiff as beneficiary. A documentary proof requirement, as we recognized in *Schreiner* and *Holsapple,* protects a legally binding document from being circumvented by an opportunistic claim that the decedent intended otherwise. If negligence law can be used without limitation to modify the beneficiaries set forth in a written instrument, then the instrument is drained of much of its legal force.

It makes sense for the life insurance company to require the change in beneficiary to be made in writing. This avoids competing claims to the same proceeds. It also avoids fraudulent claims. Allowing a negligence recovery without written documentation as to the proceeds at issue permits an end run around the contractual safeguard of requiring the change to be in writing. The result is to expose the insurer to potentially paying twice on the same death claim. Here, the daughter as the named beneficiary collects the $35,000 while another $35,000 must be paid to the widow as the "intended" beneficiary if she wins her negligence claim.

Moreover, while Farm Bureau and the agent, Schiffer, are separate parties in this case, many life insurance policies are sold by captive agents employed by the insurer. Could today's majority holding apply equally to captive agents? Again, the negligence claim based on mere oral testimony eviscerates the otherwise enforceable contract requirement that changes to the beneficiary designation must be in writing.

Here, we do not really know whether Tom Pitts still wanted his daughter to get the $35,000 upon his death and never executed the written change form for that reason. He may have been mulling over the matter in his own mind or stalling on having a difficult discussion with his wife. This speculation and the risk of overtly fraudulent claims are

avoided by requiring written proof that Tom intended to replace his daughter with his wife for that $35,000.

I also disagree with the majority's view that there is no potential for conflicts of interest. *See generally J.A.H. ex rel. R.M.H. v. Wadle & Assocs., P.C.,* 589 N.W.2d 256, 264 (Iowa 1999). Agents are supposed to serve their principals. Once a legal obligation is imposed to protect the interests of beneficiaries as well, the agent must of necessity balance the wishes of the principal against the possibility of a disappointed alleged beneficiary. For example, suppose an insured tells an agent in the presence of his wife to make his wife the sole beneficiary of a life insurance policy. Later, however, he tells the agent to have his daughter remain as partial beneficiary and not to tell the wife he has done that. The agent is now in a quandary because obeying the insured's instructions places the agent at risk of a lawsuit.

The majority dismisses this concern by stating that Michele is not asserting a duty based on her status as a family member but as an intended beneficiary, "a much more circumscribed group." I fail to see how this eliminates the potential for conflict of interest.

**II. The Economic Loss Rule Should Preclude the Existence of a Duty in This Case.**

The majority's ruling also carves out an unwarranted exception to the economic loss rule. "As a general proposition, the economic loss rule bars recovery in negligence when the plaintiff has suffered only economic loss." *Annett Holdings, Inc. v. Kum & Go, L.C.,* 801 N.W.2d 499, 503 (Iowa 2011).[9]

---

[9]The majority points out that Farm Bureau failed to make a specific argument concerning the economic loss rule. I do not believe that was necessary because the economic loss rule is simply an aspect of the overall duty question that is at the core of this case. In my view, we should proceed to apply the proper law to the duty question, including the economic loss rule. However, given the majority's decision to reserve the

In *Annett Holdings*, we reiterated the "well-established general rule . . . that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Id.* at 503 (citation and internal quotation marks omitted). We further explained that the rule "is by no means limited to the situation where the plaintiff and the defendant are in direct contractual privity." *Id.* at 504. "[T]he stranger economic loss rule" applies to cases where the plaintiff sues the defendant seeking recovery of pure economic losses suffered due to the defendant's negligent performance of a contract with a third party. *Id.* ("In a complex society such as ours, economic reverberations travel quickly and widely, resulting in potentially limitless liability."). We also noted three qualifications to the economic loss rule: (1) "actions asserting claims of professional negligence against attorneys and accountants"; (2) "negligent misrepresentation claims"; and (3) "when the duty of care arises out of a principal-agent relationship." *Id.* Michele's general negligence claim falls into none of these exceptions. She is not asserting a professional negligence claim, nor is she alleging that she was a principal to whom an agent breached a duty.[10]

At the same time, Michele's negligence claim shares the characteristics of claims that we have historically rejected under the

---

application of the economic loss rule to the present facts for another day, I simply make these comments to set forth my views at this time.

[10]The relationship between an intended beneficiary and an insurance agent is not one of principal/agent. "Agency . . . results from (1) manifestation of consent by one person, the principal, that another, the agent, shall act on the former's behalf and subject to the former's control and, (2) consent by the latter to so act." *Pillsbury Co. v. Ward*, 250 N.W.2d 35, 38 (Iowa 1977); *see also Peak v. Adams*, 799 N.W.2d 535, 547 n.2 (Iowa 2011).

Apart from her general negligence claim, Michele has a separate negligent misrepresentation claim, which is defective for reasons I discuss below.

economic loss rule. It is *remote*. Plaintiff's theory is that the agent negligently failed to perform his agency agreement with Tom, thereby resulting in Tom failing to effectuate a beneficiary change, thereby resulting in economic loss to Michele. Historically, this court has held that remote parties alleging pure economic loss may not recover on a negligence theory. *See, e.g.*, *id.*; *State ex rel. Miller v. Philip Morris Inc.*, 577 N.W.2d 401, 406–07 (Iowa 1998); *Anderson Plasters v. Meinecke*, 543 N.W.2d 612, 613 (Iowa 1996); *Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103, 107 (Iowa 1995); *Neb. Innkeepers, Inc. v. Pittsburgh-Des Moines Corp.*, 345 N.W.2d 124, 127–30 (Iowa 1984). It is also an attempt to *bypass one or more contracts*. *See, e.g.*, *Annett Holdings*, 801 N.W.2d at 503–05; *Determan v. Johnson*, 613 N.W.2d 259, 262–63 (Iowa 2000); *Preferred Mktg. Assocs. Co. v. Hawkeye Nat'l Life Ins. Co.*, 452 N.W.2d 389, 397 (Iowa 1990); *Nelson v. Todd's Ltd.*, 426 N.W.2d 120, 125 (Iowa 1988); *Richards v. Midland Brick Sales Co.*, 551 N.W.2d 649, 650–52 (Iowa Ct. App. 1996). As noted by the district court, Tom entered into an insurance policy with Farm Bureau that placed specific requirements on what must be done to change a beneficiary. Also, Tom had a principal–agent relationship with his insurance agent, Schiffer, and his estate would have the ability to sue for breach of duties arising out of that basic agreement. This action is essentially an effort by his widow to avoid the effects of these two agreements.

The economic loss rule recognizes that many events may have a ripple effect leading to financial consequences in our complex society and generally honors the allocation of those risks by contract. "Th[e] rule is partly intended to prevent . . . the tortification of contract law." *Annett Holdings*, 801 N.W.2d at 503. When physical harm occurs, or when antisocial conduct such as fraud takes place, we have generally provided

the injured party with a set of judge-made rules of recovery—those of tort law. But in dealing with mere economic loss, our judicial system has historically allowed the parties to fix the rules themselves through consensual arrangements, i.e., contracts.

The unfortunate side effect of the majority's ruling is to give a nonparty to a contract more rights than a party to the contract would have. Tom's estate could not have sued Farm Bureau because he failed to execute and return a new beneficiary designation form. Farm Bureau honored its contract with Tom. Yet now a putative beneficiary can effectively modify those contractual obligations through the device of a tort suit.

The majority correctly notes that the duty analysis in *Thompson v. Kaczinski*, 774 N.W.2d 829, 834–36 (Iowa 2009), does not apply to economic loss claims. But it errs in asserting (without citing a single Iowa authority) that "[t]he critical element in establishing a duty is the foreseeability of harm to a potential plaintiff." If a remote party could sue over any "foreseeable" economic loss resulting from the negligence of another party, our common law would be turned upside down. I say upside down because our precedents actually recognize something like the opposite principle. *Nelson*, 426 N.W.2d at 125 (where the damage was a foreseeable result from a failure of the product to work properly, the remedy lies in contract); *Richards*, 551 N.W.2d at 651 (same). Certainly, the losses that occurred in many if not all the economic loss cases cited above were foreseeable. *See, e.g., Neb. Innkeepers*, 345 N.W.2d at 126 (harm to business owners from bridge closure).

I recognize that the majority's holding appears to be limited to insurance agents. But there is no reason to deviate from the economic loss rule here.

**III. The Majority's Opinion Is Inconsistent with Recent Legislation.**

As noted by the court of appeals, while this case was on appeal the General Assembly enacted the following legislation:

> 7. *a.* Unless an insurance producer holds oneself out as an insurance specialist, consultant, or counselor and receives compensation for consultation and advice apart from commissions paid by an insurer, the duties and responsibilities of an insurance producer are limited to those duties and responsibilities set forth in *Sandbulte v. Farm Bureau Mut. Ins. Co.,* 343 N.W.2d 457 (Iowa 1984).

> *b.* The general assembly declares that the holding of *Langwith v. Am. Nat'l Gen. Ins. Co.,* (No. 08–0778) (Iowa 2010) is abrogated to the extent that it overrules *Sandbulte* and imposes higher or greater duties and responsibilities on insurance producers than those set forth in *Sandbulte.*

2011 Iowa Acts ch. 70, § 45 (emphasis added) (amending Iowa Code § 522B.11 (2009)).

*Sandbulte* had set forth a bright-line rule that an insurance agent does not owe a duty to advise his or her client regarding the client's insurance needs unless "the agent holds himself out as an insurance specialist, consultant or counselor and is receiving compensation for consultation and advice apart from premiums paid by the insured." 343 N.W.2d at 464. *Langwith* overruled *Sandbulte* and decided that the scope of an insurance agent's duties to his or her client would be based on a consideration of all the circumstances. 793 N.W.2d at 222. The 2011 legislation, in turn, negated the *Langwith* holding and expressly provided that "the duties and responsibilities of an insurance producer are limited to those duties and responsibilities set forth in *Sandbulte.*" 2011 Iowa Acts ch. 70, § 45 (emphasis added).

The specific issue in both *Langwith* and *Sandbulte* was the extent of the agent's duties to his or her *client.* *Sandbulte* had reiterated an

earlier holding that agents have a duty "to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured." 343 N.W.2d at 464 (citing *Collegiate Mfg. Co. v. McDowell's Agency, Inc.*, 200 N.W.2d 854, 858 (Iowa 1972)). *Langwith* allowed for the possibility of a more extensive duty. 793 N.W.2d 219–223. This case concerns the agent's duties (if any) to a *nonclient*. Still, a case can be made that the 2011 legislation freezes the duties and responsibilities of agents to those set forth in *Sandbulte*, which did not mention any duties to nonclients. The court of appeals took a contrary view that this case is not controlled by the 2011 legislation because it involves the same general duty of care articulated in *Sandbulte*, the only question being whether that duty may extend to an intended beneficiary of an insurance policy.

What is not debatable, however, is that the majority opinion recognizes a duty on the part of insurance agents that has not heretofore been recognized in Iowa. In 2011, the legislature put up a stop sign after we modified our previous law of agent's duties based on the Restatement (Third) of Agency and a much larger and more persuasive body of authority than my colleagues have cited here. *Langwith*, 793 N.W.2d at 220–23. At a minimum, further expansion of legal liability should be backed by something more than the sprinkling of caselaw and treatise citations in the majority opinion; otherwise, the public policy in this area is best left to the legislature. *See Galloway v. State*, 790 N.W.2d 252, 259 (Iowa 2010) (Cady, J., dissenting) (stating that unless the public policy is clear and apparent, "public policy is best left to our legislative branch of government to decide as representatives of the people").[11]

---

[11]The majority's conclusion regarding duty is also contrary to a venerable precedent of this court. In *Duffie v. Bankers' Life Ass'n of Des Moines*, the widow of a life insurance applicant brought an action as designated beneficiary in the application alleging that the insurer's negligent delay in processing the application deprived her of

**IV.  Under the Majority's Own Reasoning, There Is No Basis for a Negligent Misrepresentation Claim.**

The majority engages in a thorough and accurate review of our negligent misrepresentation precedents.  Ultimately, though, its analysis is undermined by a lack of conceptual clarity.

The majority has correctly described the two forks in the road.  Generally speaking, if A (or A's agent) negligently provides false information to B to guide B in a transaction with C, then a potential negligent misrepresentation claim may lie.  However, if A (or A's agent) negligently provides false information to B in a transaction with A, then this is the classic situation involving only two parties where the tort of negligent misrepresentation is not available.  *See generally Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 125–26 (Iowa 2001).

According to the majority: "When Schiffer allegedly advised Tom and Michele that Tom's daughter was no longer the primary beneficiary on the policy, he was functioning as Tom's agent."  I agree that to the extent Schiffer made a negligent misrepresentation in his capacity as Tom's agent to Tom regarding the status of beneficiaries, a potential claim for negligent misrepresentation by Tom (or his estate) may lie.  In this scenario, Schiffer is like the guidance counselor in *Sain*.  *Id.* at 126–28.  He was supplying information, as insurance agents do, to his client Tom to guide Tom in a transaction with a third party, namely Farm Bureau.  *Id.*

However, the majority's reasoning does not support a negligent misrepresentation claim by Michele.  Michele had no ability to designate

---

the insurance policy proceeds.  160 Iowa 19, 21, 139 N.W. 1087, 1087–88 (Iowa 1913).  She also filed a petition as administratrix.  *Id.* at 19, 139 N.W. at 1087.  We held that she could pursue the negligence claim on behalf of the estate but could not maintain her negligence action as beneficiary because "the negligence, if any, was that of failing to discharge a duty owing the deceased."  *Id.* at 29, 139 N.W. at 1090.

beneficiaries under the life insurance policy. The only action she could have taken was to try to influence *Tom* to take some action. Thus, any statements made to her by Schiffer as Tom's agent were not statements for her guidance in dealings with someone else; they were statements for her guidance in dealings with Tom. *See id.* at 126. Put another way, could Michelle have sued Tom for negligently misrepresenting that she was going to receive the $35,000? Clearly not. Therefore, she cannot sue a person who was making statements on Tom's behalf either. *See Haupt v. Miller*, 514 N.W.2d 905, 910 (Iowa 1994) (finding that the motions to dismiss filed by individuals who allegedly made negligent misrepresentations in their capacity as officers and directors of the party on the other side of the transaction from the plaintiff should have been granted).[12]

The majority cites a treatise to try to suggest that its position is within the legal mainstream. *See* 1 Jeffrey E. Thomas & Francis J. Mootz, *New Appleman on Insurance Law Library Edition* § 2.05[2][d][i], at 2-33 to 2-34 (2011). However, this treatise discussion is part of a section entitled, "Intermediaries' Liability to Insureds." *Id.* at 2-28. The only actual case cited by the majority where a putative beneficiary was allowed to sue the insured's agent is *Merrill v. William E. Ward Ins.*, 622 N.E.2d 743 (Ohio Ct. App. 1993). That case involved somewhat

_____

[12]I acknowledge that terms like "arm's length" and "adversarial" would not apply to Schiffer's alleged conversations with Tom and Michele. *See Sain*, 626 N.W.2d at 126. But just as we emphasized in *Sain* that negligent misrepresentation can exist as a cause of action even when there is no business transaction, *id.* at 125–26, so it also needs to be emphasized that what matters is the alignment of the parties—i.e., did the information supplied "harm[] the plaintiff in its relations with third parties, as opposed to harm to a plaintiff in its relations with the provider of the information"? *Id.* at 126. When the transaction is not a business transaction, we are not going to see typical arm's length behavior. It would be incongruous of us to relax the "business transaction" element of negligent misrepresentation in Restatement (Second) of Torts § 522, while strictly requiring "arm's length" behavior for an exclusion from that tort.

exceptional facts. After being diagnosed with a fatal illness, the decedent executed a will leaving the proceeds of his insurance policies to his children. *Merrill*, 622 N.E.2d at 746. At the same time, he executed a change of beneficiary form for one of the insurance policies deleting his wife as beneficiary. *Id.* However, the decedent's insurance agent had written a letter which stated incorrectly that the wife was not a beneficiary of another policy. *Id.* at 745–46. No change of beneficiary occurred as to that policy. *Id.* Following the decedent's death, the children discovered what had happened and sued the agent for negligent misrepresentation. *Id.* at 746. The Ohio Court of Appeals held that the children's negligent misrepresentation claim could go to the jury. *Id.* at 748–50. The decision strikes me as somewhat result-oriented. The court concedes that the children could not have relied on the agent's misrepresentations, but without citation of authority concludes that "evidence of decedent's reliance is sufficient to impose liability for defendants' negligent misrepresentation." *Id.* at 749–50.[13]

Finally, even if I agreed with the majority that Michele could bring a negligent misrepresentation claim against Schiffer, the majority cannot credibly explain why it does not affirm summary judgment for Farm Bureau on that claim. According to the majority, Schiffer was acting as Tom's agent; indeed, that is essential to the majority's analysis. So there is no basis for Farm Bureau to be vicariously liable for Tom's conduct under respondeat superior.

For the foregoing reasons, I dissent and would affirm the dismissal of the negligence and negligent misrepresentation claims.

Cady, C.J., and Waterman, J., join this dissent.

---

[13]Notably, there was considerable written documentation to establish the decedent's intent to make his children the beneficiaries, unlike here. *See* part I of my dissent, above.